## Hulseman and Brinkworth *versus* Rems and Siner.*

*Municipal Elections when included within the General Election Law as to
the Soldiers' vote.—Right of Return Judges to fix Place of Meeting
and as to Adjournments.—Fraudulent Election Returns not relieved
against in Equity ; but under Law relative to Contested Elections.*

1. The law providing for the voting of soldiers away from home in actual
service, covers the case of municipal elections held at the same time as the
general election ; hence the soldiers in camp, belonging to Philadelphia, at
the time of the election of 1861, had the right to vote for their proper muni-
cipal officers, and to have their votes counted, if properly certified and re-
turned, and it was the duty of the judges of each ward to meet on the second
Tuesday of November, to include the votes so returned in their enumeration.

2. It is not a sufficient reason for invalidating the election, that some of the
return judges refused to meet on that day ; nor that those who did meet, met
at an unusual place, where it was shown that the duties of the return judges
were so interfered with by a disorderly crowd, that they could not be per-
formed at the usual place.

3. Where the return judges included the soldiers' vote, and issued certifi-
cates of election to those who were thereby elected members of Common
Council, and it was evident that some of the returns were forgeries, and that
through them several of the candidates had improperly obtained certificates
of their election, the courts cannot for that reason summarily interfere with
and annul those certificates, in the absence of proof that the return judges
acted fraudulently ; but the case must be tried by the forms of a " contested
election," before the tribunal appointed by law, and not by the ordinary forms
of legal or equitable process before the usual judicial tribunals.

In the Supreme Court.    In Equity.

This was a proceeding for an injunction founded on a bill filed
November 1861, in the Western District, by John Hulseman and
George Brinkworth, " citizens and qualified voters of the nine-
teenth ward of the city of Philadelphia, as well for themselves as
for other citizens and voters therein," against James Rems and
Charles B. Siner.

The bill set forth the 43d, 44th, 45th, 47th, 48th, 49th, and
50th sections of the Act of Assembly of Pennsylvania relating to
general elections, which provide for the manner of taking and
returning the votes of " such citizens of the Commonwealth duly
qualified as voters when in actual military service, in any detach-
ment of the militia or corps of volunteers under a requisition
from the President of the United States, or by the authority of
this Commonwealth."

The bill also set forth the provisions of the Act of February
2d 1854, by which the mode of making out and delivering certifi-

---

* When this case was argued, no question was raised on the constitutionality
of the law providing for the votes of the soldiers ; but this question was raised
at the next term at Philadelphia, and the law was declared unconstitu-
tional.

[Hulseman and Brinkworth *v.* Rems and Siner.]

cates of election to persons elected at municipal elections in the city of Philadelphia, is provided; as also the Act of March 21st 1861, by which the time of electing the municipal officers of said city was changed from the first Tuesday of May annually to the day of holding the general election, and then proceeded to aver:

That on the day of the last general election, to wit, the second Tuesday of October last, an election was held in said city for county and state officers, and also for municipal officers of said city; and that complainants were, at said election, duly elected by a majority of votes of the qualified voters of the Nineteenth Ward of said city, members of the common council of said city.

That the judges of the several election divisions of said ward met on the day ensuing said election, and by adjournment on the next day thereafter, and constituted John H. Jeffries, one of their number, the return judge of said ward, and authorized the certificate to be issued (a copy whereof was annexed); and that they are advised that the functions of the said judges of said election for the said ward then ceased and ended.

That certain persons to them unknown, intending and contriving to defeat the election of complainants to the offices aforesaid, and to nullify votes cast by the majority of voters at the said election, by falsifying, polluting, and corrupting the returns of the votes cast in the companies or troops so voting on the day of election, as aforesaid, have caused to be transmitted to the said Charles D. Knight, Prothonotary, as aforesaid, certain forged and spurious papers (copies of which were annexed), purporting to be returns of elections held in the companies of the 88th Regiment Pennsylvania Volunteers, at Fort Ellsworth, near Alexandria, commanded by Colonel George P. McLean.

That the alleged company returns, with the papers purporting to be the oaths of the officers by whom the company elections were alleged to have been held, and the signatures of the said officers, were each and all forged, and that no election was held at that time in said companies, or at any other time.

That on the morning of the second Tuesday of November, instant, the following notice by A. E. Eldridge, who had been president of the board of return judges, was sent to the said judges of the election divisions of said Nineteenth Ward of said city, to meet on that evening:—

"Philadelphia, November 12th, 1861.
"Mr. Joseph Woodhead, Judge of the Second Precinct:
"Sir,—You are hereby notified to meet the return judges of the Nineteenth Ward, this Tuesday evening, at the house of Robert Bowers, at the corner of F. R. and Norris, at 8 o'clock.
"A. E. ELDRIDGE, President of the Board."

[Hulseman and Brinkworth *v.* Rems and Siner.]

That certain of said judges refused to act thereat, but that six of said judges repaired to some other place in the vicinity, and then and there proceeded to count the votes purporting by said forged returns to have been cast in the said companies A, C, and F, and to sign and issue to the defendants certificates of election to the said offices. And that the defendants now hold in their possession the said false and fraudulent certificates, based upon said forged returns.

Complainants further averred that the prothonotary did not certify to the said judges' copies of the said forged company returns; but that certified abstracts thereof, including said pretended votes for ward officers of said ward, were obtained from him by a person not one of said judges, long before said second Tuesday of November; and that the said prothonotary, having been notified that said returns were forged, would not certify copies thereof; and that said certified abstracts were used to compass the said fraud. That the prothonotary did not even certify to the return judges of said county copies of said forged returns, under the advice of the Court of Common Pleas of said county, given to him in open court, the learned judge who gave said advice pronouncing that the evidence of the forgery was overwhelming.

That they are advised that the said meeting of said judges last mentioned was without any authority of law, and that their proceedings and said certificates of election were null and void, even if said company returns had been genuine, and if they had been certified to by the said prothonotary, inasmuch as the functions of the said division judges had ceased on the preceding 10th day of October last.

The complainants showing to the court that the said certificates of election so held by the defendants are not only null and void in point of law, by reason of the same issuing from a defunct body, but that in point of fact they are false and fraudulent, by reason of being founded upon, and representing as true, the forged and spurious returns aforesaid; and upon information and belief, that the said defendants intend, unless restrained, to retain the said false, fraudulent, and illegal certificates of election, and to utter and publish the same as if lawful and true, and not based upon forgery and fraud; and that they will attempt, in contempt and violation of law, and to the prejudice of the rights of complainants, and the interests of the community, to intrude themselves among the members of the Common Council of said city at their organization; that the "prevention or restraint of the commission or continuance of acts contrary to law, and prejudicial to the interests of the community or to the rights of individuals," are matters cognisable in equity, and that unless the said defendants are restrained and prevented by the power

[Hulseman and Brinkworth *v.* Rems and Siner.]

and authority of the court in the premises, great and irreparable mischief will be done; they prayed the court to order, adjudge, and decree that the said company returns are false, forged, and fabricated, and a fraud upon them and the community; and that the said certificates so held by the defendants are illegal, fraudulent, and utterly void; and perpetually to enjoin, and by writ of preliminary injunction presently enjoin, the said defendants from using in any manner, at any time, or for any purpose whatever, the said certificates, or either of them, or the said false, forged, fabricated company returns, or either of them; and that the said certificates be delivered up to be cancelled; and for such further aid and relief in the premises as may be consistent with equity; with prayer for a writ of *subpœna*, commanding defendants to appear on a day certain, to answer the matters therein objected against them, and to do, submit to, and receive whatsoever shall be adjudged in the premises.

This bill was sworn to and filed, and this writ awarded. On the return day affidavits *pro* and *con* were read before the court, and the refusal of some of the return judges to meet on the second Tuesday of November, and the adjournment of the others to an unusual place, were accounted for by proof that the judges were liable to interruption while holding their meetings at the place usually occupied by them in the discharge of their official duties.

The case was argued by *William L. Hirst* for the complainants, and by *Amos Briggs* for the respondents. No printed brief was furnished by either of the counsel.

The opinion of the court was delivered, November 25th 1861, by

LOWRIE, C. J.—The law providing for the voting of soldiers, who are away from home in actual service, so clearly covers, by its terms, the case of municipal elections, which are held at the same time as the general election, that we are unable to find any argument that is at all satisfactory for excepting the late municipal election of Philadelphia out of its operation. We must, therefore, declare that the soldiers in camp had a right to vote for their proper municipal officers at home, and to have their votes counted on the second Tuesday of November, if they were properly certified and returned. It was therefore the duty of the judges of the Nineteenth Ward to meet on the second Tuesday of November, so as to include in their enumeration such returns of the votes of the soldiers as should be properly certified to them; and this, whether they had a regular adjournment for that day or not.

They did meet on that day, and include in their enumeration

the votes of the soldiers, issued certificates of election to those candidates who, by the votes thus included, appeared to have been elected: and now we are asked to declare those certificates illegal, fraudulent, and void, and to enjoin the defendants from using them, and to require them to be delivered up and cancelled.

Possibly some of the camp returns, or pretended returns, had obtained so bad a reputation by the public examination, which had been had of them before the Court of Common Pleas, that judges, who were carefully honest, would have discovered very clear reasons for rejecting them. But even if we have authority for examining this matter, we have no convincing proof that the return judges acted fraudulently in receiving those returns. They seem to have had formal certificates of them, and they may have committed a mistake, rather than a fraud, in not duly inquiring of the channel through which those certificates were received, and may very honestly have concluded that they have no authority to inquire into the authenticity of papers which came into their hands in proper form. We find fraud enough in these camp returns without taking suspicions for evidence or proof of it, and without condemning those against whom the evidence is incomplete.

It is alleged that on the second Tuesday of November some of the return judges refused to meet, and that those who did meet, met at an unusual place to count the soldiers' votes, and to issue the certificates: but the affidavits of the defendants seem to us sufficiently to account for this, by showing that the duties of the return judges were so interfered with, by a disorderly crowd, that they could not be performed at the usual place.

We have, therefore, no ground left for our interference, but the single one that the return judges included, in their enumeration, returns purporting to be from three companies of volunteers, which were mere forgeries. We admit that, in the evidence before us, it appears clear to us all that those returns are forgeries, and that it was only by their inclusion in the enumeration that the defendants have obtained certificates of their election. We admit, therefore, that the evidence proves that these certificates of the election of the defendants are founded in manifest fraud, the forgery of some unknown person, but we do not find that the defendants had any hand in it, and we trust they had not.

Can we, on this account, interfere and declare the certificates void? We think not. According to our laws, the election has passed completely through all its forms, the result has been in due form declared and certified, and the defendants have received their certificates of election, and are entitled to their seats as members of the common council. The title-papers of their offices

[Hulseman and Brinkworth v. Rems and Siner.]

are complete, and have the signatures of the proper officers of the law; and if they are vitiated by any mistake or fraud in the process that has produced them, this raises a case to be tried by the forms of "a contested election," before the tribunal appointed by law to try such questions, and not by the ordinary forms of legal or equitable process before the usual judicial tribunals. It is part of the process of political organization, and not a question of private rights, and therefore the constitution does not require that the courts shall determine its validity.

The law has appointed a special tribunal to try just such a question as this, and we can have no right to step in between the case and that tribunal, and alter the return of the election judges, and annul their certificates. Plain as the fraud appears, and earnestly as we condemn it as citizens, it is no part of our functions as a court to sit in judgment on it. The Common Council is the proper tribunal to try cases of contested elections relative to its own members, and there the fraud and forgery must necessarily be tried and decided with final effect. They are appointed by law to try the whole case, and they alone can try it. We decided this last year at Philadelphia, in the case of The Commonwealth v. Baxter, 11 Casey 264, a case from Bradford county, where a commissioner of highways had received a regular certificate of election, and where we decided that it could be avoided only by a regular process of a contested election case. Perhaps that case may be found worthy of examination.

If, in this way, we suffer a gross fraud to pass through our hands without remedy, it is not because we have any mercy for the fraud, but because we cannot frustrate it by any decree of ours without an act of usurpation. Another tribunal is appointed to administer the remedy, and we believe that, on proper application, it will administer it rightly, according to the evidence it may have. And if we had doubts of this, we should still not be justified in interfering. Sad indeed, very sad, has been our recent experience of election frauds; but we cannot believe that our partisanship has become so reckless, and our elective franchise so carelessly exercised, and our thirst for office and power so intensely selfish, that any official body will sanction so base and frightful a fraud upon the public as this *now* appears, or that any man deemed worthy of an office would accept it under such circumstances.

It is suggested that there is danger, if we do not interfere, that this fraud will be persisted in by the defendants, and adopted by their co-partisans, and will be resisted by riotous violence. Possibly this may be so; for, when public forms of proceeding are tainted with known fraud, public or common sense cannot help regarding the sanction of them as a mere exercise of force without right, and then riotous resistance becomes probable

[Hulseman and Brinkworth *v.* Rems and Siner.]

where the public take great interest in the matter; as violence is very apt to beget violence.   God save our country from this additional degradation.   The violence of partisan strife has already humiliated us much.   Let not fraud and force be met by riot now and here.   Rouse by violence the passions of men, and the contested election case will become a trial of the courage of opposing parties, and not of the truth of the case.   Silence the passions, and let truth have a chance to present her claims to quiet reason.   Let stillness or the quiet force of relevant testimony, rule the time that intervenes between now and the decision of the contested election, and the decision will be right.   No man of sense, much less of conscience, will dare to stand in broad open day before high Heaven, and before the honest conscience of the country, and sanction this forgery, if the evidence be then as it now is.   None such will desire to do it.   But if his judgment be beclouded by the passions of opposing popular parties, and he be forced to assert his courage rather than the truth, then the rights of justice will be insecure.

It is a sore affliction to us to witness these disorders of our country.   We cannot avoid reflecting, whither do they tend; and we wish that all others would think of this, that we may find a proper political remedy.   Our selfish assertion of our *rights*, and neglect in studying our *duties*, may have much to do with them.   Our elections have become so intensely selfish, that opposing parties treat each other as enemies, and thus many on each side will come to think that tricks and lies, fraud, forgery and perjury are legitimate strategy, and even honest men are led to claim the fruits of it, and candidates are very apt to be selected, not because of their honesty or their competence for office, but of their capacity to lead in an election combat, and of their readiness to reward their assistants at the expense of the public.   When elections are conducted in any large degree on such principles, they become a form of civil war, repeated annually by appointment of law, and tending to substitute anarchy for law.   For a while it is a question which party shall assemble the most *voters*, honestly or dishonestly, by fair argument or by lying charlatanism; but soon it becomes a question which party can force the *election returns* to count the highest numbers, and then forgery and perjury lend their assistance. This is a frightful stand-point to occupy for a look into the future. We shall not attempt to report its revelations.

Injunction refused.