STATE OF NORTH DAKOTA EX REL. J. A. COFFEY, Relator, and J. A. Coffey, Individually, Appellant, v. R. G. McFARLAND, Respondent.

(223 N. W. 931.)

Opinion filed March 2, 1929.

M. C. Freerks, James M. Hanley, and E. B. Cox, for appellant.

*John W. Carr* and *N. J. Bothne,* for respondent.

BIRDZELL, J. This is an appeal from a part of an order made by the Honorable Thomas H. Pugh, as judge of the district court of Burleigh County, on December 27, 1928, whereby the application of the plaintiffs for a temporary injunction was denied and a restraining order previously obtained was vacated. The action was brought for the purpose of securing an adjudication to the effect that the nomination and election of the defendant R. G. McFarland to the office of district judge in and for the fourth judicial district was illegal, null and void. In the complaint there are allegations as to certain negotiations and transactions between the defendant McFarland and two other persons, whereby the said McFarland is alleged to have advanced his political interests during the pre-election campaign in a corrupt manner and in violation of the corrupt practices act. There are also allegations of corruption in the obtaining of a political endorsement of his candidacy and of the expenditure of a sum in excess of the maximum permitted by statute. It is admitted, however, that on the face of the returns the defendant McFarland had secured more votes than the relator and that at the regular meeting of the canvassing board he had been found to be one of the successful candidates at the election. It is charged that the canvassing board is about to issue a regular certificate of election to McFarland and that the said McFarland is about to qualify as district judge and that he will do so as soon as the certificate of election is issued and delivered to him. Upon these allegations the plaintiffs asked that the defendants, the governor and secretary of state, who are members of the canvassing board, be restrained from issuing a certificate of election to the defendant McFarland and that the said McFarland be restrained from taking his qualifying oath of office during the pendency of the action. An order to show cause and a temporary restraining order were issued in accordance with the further prayer of the complaint, which were made returnable on the 15th day of December, 1928. Upon the return day a return was made by the defendant McFarland and a separate joint return by the remain-

ing defendants. In these returns and upon the hearing it appeared that before the service of the order to show cause and temporary restraining order upon the defendants, a certificate of election had been issued to the defendant McFarland and that he had qualified by taking his oath of office and depositing the same in the office of the secretary of state as required by law. Thereupon the action was dismissed as to the defendants Maddock and Byrne, governor and secretary of state, respectively, members of the canvassing board, and the restraining order, both as to them and as to the defendant McFarland, was dissolved and vacated. The application of the plaintiffs for an injunction restraining McFarland from qualifying and assuming the duties of the office was denied. The appeal is from that portion of the order which vacates the restraining order and denies the temporary injunction.

Since it affirmatively appeared upon the return day that the defendant McFarland, upon the face of the election returns, had been elected, had regularly received his certificate of election and had taken and subscribed his oath of office and deposited the same in the office of the secretary of state, thereby completing all the steps necessary to qualify for the assumption of the office upon the expiration of the term of his predecessor, a temporary injunction could serve no purpose other than to prevent such defendant from taking possession of the office and entering upon a discharge of the duties incident thereto.

In the complaint, which was drawn before the certificate of election was issued and the qualifying oath filed, the grounds upon which the court was asked to restrain the defendants were the absence of a plain, speedy and adequate remedy at law and that, unless the defendants were restrained in the manner indicated, any subsequent judgment of the court negativing the title of McFarland to the office would be inoperative and of no effect, and there was danger that the object and purposes of the law with respect to corrupt and illegal practices would be defeated. In argument upon the appeal it was further urged that equity should interfere to preserve the status quo pending the determination of the controversy in order to avoid complications incident to uncertainty occasioned by the fact that two persons were claimants to the office and both acting as incumbents—one as holding over until his successor should be elected and qualified, and the other as the one elected on the face of the returns, whose title is questioned.

The validity of these contentions in support of the exercise of equity jurisdiction obviously rests upon two assumptions: first, that there is a jurisdiction in equity to determine who of two claimants is legally entitled to an office pending the determination of a controversy in which the legal title is in question; and, second, that complications incident to uncertainty as to the ultimate result of a controversy between two claimants for an office can properly be obviated by protecting the possession and prerogatives of the last incumbent where he is authorized to hold over until his successor is elected and qualified. So long as the outcome of the controversy is in doubt, this assumption is necessarily arbitrary, for it may be demonstrated that the right of the defendant to hold the office is clear. In this event it would appear that the uncertainty should have been relieved by protecting his possession rather than that of the plaintiff. Where the uncertainty can be relieved by protecting the possession of either party, there would seem to be no urgent or sufficient reason for ignoring the legal indicia of title. The basic question, then, is whether equity will interfere by injunction to disturb a possession predicated upon a prima facie legal title to an office.

"No principle of the law of injunctions," says 2 High on Injunctions, 4th ed., § 1312, "and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that the courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum for determining disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy by proceedings in the nature of a quo warranto. . . . So it is held that a court of chancery has no jurisdiction to restrain an official board of canvassers from canvassing the returns of an election. . . ."

"Section 1313. In conformity with the general doctrine as above stated, it is held that one who has been duly appointed and commissioned to fill a vacancy in a public office will not be restrained from entering upon the discharge of his duties upon the application of an-

other claimant to the office, but such claimant will be left to his legal remedy. Nor will a court of equity entertain a bill by a former incumbent of a public office, claiming to be re-elected, to enjoin his opponent from using his certificate of election, or from qualifying and entering upon the discharge of his duties, even though gross frauds in the election are alleged in the bill. Nor will equity interfere by injunction to prevent the claimant of an office from receiving his certificate of election upon the alleged ground that he does not possess the necessary qualifications required by law. . . ."

This is not to say that equity may not protect the possession of an actual incumbent of the office while the title is in controversy. High, Inj. § 1315. But the relief in such cases is dependent upon the plaintiff's possession and upon the public necessity which requires an incumbent of every office "where, therefore, there is no showing that the plaintiff is in the actual possession of a disputed office or is exercising any of the duties of that office, the relief will be denied as against the de jure claimant thereof." High, Inj. § 1315. He must first show the prima facie right of occupancy and that there is no other person authorized by law to hold the office. 46 C. J. 1009, § 215. The propriety, then, of interfering by injunction with the assumption of control over an office by a claimant presenting a certificate of election and who has qualified in the manner required by the constitution, depends upon whether or not such claimant possesses the prima facie right to occupancy. In other words, equity will not interfere to protect a possession that is legally wrongful. Equity follows the law in giving effect to steps that have been taken to vest in one a prima facie legal title to the office and a prima facie legal title cannot be in two persons at the same time. Upon this question the authorities are clear. One of the best expressions is that found in Moulton v. Reid, 54 Ala. 320, in which the court said (page 323):

"When there has been an authorized election to fill a public office, there must be not only a mode prescribed by law of ascertaining its result, but there must be of necessity some mode of furnishing to the person elected evidence of the fact on which he can enter into the office, and of certifying the fact to the people who have the right to demand the performance of official duty. The fact cannot be permitted to rest in doubt or uncertainty, or subject to inquiry and litigation, whenever

authority is exercised. A certificate issued by the sheriff, a public officer, charged with the duty of conducting the election, ascertaining and declaring its result, is the evidence of election the statute prescribes. When issued, it is conclusive evidence of the result of the election—of the right of the person to the office to which it shows him to have been elected, except when statutes authorize a contest of the election, and the contest is commenced, or on an information in the nature of a quo warranto, to determine the right to the office. In these proceedings it is prima facie evidence of the right, imposing the burden of proof on those who impeach its fairness. Brightly, Lead. Election Cas. 319, note; Hueseman v. Rems, 41 Pa. 396; Kerr v. Trego, 47 Pa. 296; State ex rel. Biggs v. Churchill, Gil. 369, 15 Minn. 459; State ex rel. Atherton v. Sherwood, 15 Minn. 221, Gil. 172, 2 Am. Rep. 116; People ex rel. Benoit v. Miller, 16 Mich. 56; Com. ex rel. Ross v. Baxter, 35 Pa. 263; People ex rel. Platner v. Jones, 17 Wend. 83; People ex rel. Benton v. Vail, 20 Wend. 12; State, Gledhill, Prosecutor, v. Governor, 25 N. J. L. 344; Hadley v. Albany, 33 N. Y. 606, 88 Am. Dec. 412; Morgan v. Quackenbush, 22 Barb. 79. Nor is the rule varied because a prior incumbent, contesting the validity of the election, is in office, and authorized to hold until his successor is elected and qualified. People ex rel. Cummings v. Head, 25 Ill. 325. When an incumbent of a public office is authorized to continue in office, beyond the duration of the term fixed, until a successor is elected and qualified, the object is to prevent a vacancy in the office, and the suspension of official duty. The extension is for public benefit, and not to confer on the incumbent a right to continue, when another has the legal right to enter into the office. It was the duty of appellant to remain in the office of mayor until the election and qualification of his successor. It was not his duty or right to remain after the election and qualification of the appellee, Reid. The certificate was evidence of Reid's election, as conclusive on the appellant, as it was on any other citizen; and as conclusive on him, as it would have been if he had not been a rival candidate for the office, or if it had not been his duty to remain in office until the election and qualification of his successor. The claim preferred by the bill, is, that he is his own successor, and in that right entitled to hold the office. To support this claim he proposes to remain in the office, and asks that Reid be en-

joined from the use of the certificate of election, which it is conceded by the bill, at law, entitles him to enter into the office, and consequently compels the appellant to vacate it. If such is the effect of the certificate at law, it is difficult to conceive how it can be of less force in equity. It is as evidence of the fact of election, which confers the right to the office, that the certificate operates. Equity follows the law, and 'when a rule, either by common, or statute law, is direct, and governs the case with all its circumstances, or the particular point, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it.' 1 Story, Eq. § 64."

The above doctrine was held applicable in that case in disposing of a bill in equity, which charged that the certificate was false and infected by fraud; also against the contention that the remedy to contest the election was inadequate.

In a later Alabama case, Casey v. Bryce, 173 Ala. 129, 55 So. 810, the doctrine of this case was followed in sustaining a demurrer to a bill for injunction brought by a sheriff, who had not been a candidate for re-election, to prevent a successful candidate from assuming possession and control of the office pending the outcome of a contest between the defendant and the contestant, the court saying (134, 811): "A commission from the governor, issued on a certificate of election, confers a clear prima facie title to the office, entitling the person commissioned, after due qualification, to enter upon the discharge of the duties of the office; and his title is conclusive until the ultimate right to the office is determined in quo warranto (or now on statutory contests); and no inquiry as to the truth or falsity of the certificate upon which the commission is based can be entertained in any mere collateral proceeding." In speaking further as to the relief asked by the bill, the court said: "And it asks the mandatory aid of a court of chancery to keep in office one whose lawful term has expired, and to keep out one who has been duly elected thereto and commissioned therefor; in other words, to halt him upon the threshold, and command him to wait until the claims of his competitor, a stranger to complainant, have been disproved. There is not, and cannot be, any such right in an outgoing public officer, and we are cited to no principle of law that even tends to support the proposition."

It was early decided in Illinois (People ex rel. Cummings v. Head,

25 Ill. 325) that a person holding a canvassers' certificate of election to an office is entitled to the present possession of the office notwithstanding the prior incumbent had instituted a proceeding to contest his election and that the certificate of election affords prima facie evidence of the right to the office until the canvass should be set aside in an appropriate proceeding. In discussing the question, the court said (page 328):

"Upon receiving the certificate of election, and taking the oath of office, and giving bond, the relator was as much entitled to take possession of the office as he ever could be. There is no intimation in any part of the statute that such right shall be suspended by the notice of contest, or for any other cause, and his right must be held to be complete till it is superseded by another certificate, to be issued to his competitor by the county clerk upon the certificate of the tribunal before which the contest is tried. Who shall say without law that the party who possesses all the evidence of election and qualification which he can ever have, all that the law has authorized to be given in any case, is not entitled to, and shall not enjoy, the office?

"In this case, it is true, the contestant is the old clerk, and in possession of the office, but such is not always the case. Suppose the old clerk had not been a candidate. Could he, when the relator presented himself with a certificate of election, having taken the oath of office, and given the requisite bond, and demanded the records, etc., say to him that somebody who had been a candidate, was going to contest the election, and would, within the thirty days allowed by law, give him notice of a contest, or had already given such notice, and upon the mere suggestion that the demandant had not been legally elected, hold on to the office himself by force? He would have the same legal right to do it in that case as in this. If the course pursued in this case by the old clerk should be sustained, then every one elected to an office, no matter how fairly or legally, may be kept out of it during a contest, which by appeals and delays, may continue during a considerable portion of the time, if not the whole period for which he was elected. Such is not the law, as we understand it."

This was a mandamus proceeding, but what is said indicates the force of a prima facie legal title to an office.

In Stamps v. Tittle (Tex. Civ. App.) 167 S. W. 776, it is held:

. "(1) Though a court of equity will protect by injunction an incumbent of an office, who claims the same under color of title, as against an intruder, the incumbent must show that he himself is not a mere intruder and establish by proof some right to the office he occupies.

. .. .

. "(3) Where a person holds a certificate of election or a commission of appointment to an office, he is entitled to the possession of the office; such certificate or commission being the highest and best evidence of title to the office until it is annulled by judicial determination in quo warranto or other proceeding."

In La Pointe v. O'Malley, 46 Wis. 35, 50 N. W. 521, the supreme court of Wisconsin, after holding that of two candidates for an office the one receiving the greater number of votes as shown by the canvass and who is declared elected and who qualified was prima facie the de jure officer and any other person who assumed to exercise the duties of the office, a usurper, said (62):

. "Any other rule, as against persons in office and claiming to be elected their own successors, would be most unjust and highly prejudicial to the public welfare, and would place every person contesting for an office against the party holding the same, at a great disadvantage. If a candidate for an office, contesting against the person holding the same, must not only beat his contestant at the polls, but must afterwards, and before he can be permitted to discharge the duties of his office and receive the emoluments thereof, contest his right again in the courts upon the mere claim of his contestant that the canvass does not show the true result of the election, such official candidate will have a most unjust advantage in the contest for office, and one which ought not to receive the judicial sanction."

This was said in a case in which the tenure of the office was for a definite term and until the successor should be duly elected and qualified.

In commenting on the inability of a court of equity to interfere to prevent one holding a certificate of election from qualifying and assuming the duties of the office, where his right to the office was drawn into question by alleged fraudulent practices, the supreme court of Pennsylvania, In Hulseman v. Rems, 41 Pa. 396, at page 401, said:

. "If, in this way, we suffer a gross fraud to pass through our hands

without remedy, it is not because we have any mercy for the fraud, but because we cannot frustrate it with any decree of ours without an act of usurpation." McCrary, Elections, 4th ed. § 317; Cameron v. Parker, 2 Okla. 295, 38 Pac. 14.

McCrary on Elections, 4th ed. § 302, comments upon the rule in line with the above authorities. This authority points out that pending a judicial investigation of the merits of an election controversy, the right of the person holding the usual credentials to qualify and assume the duties of the office must be recognized, for otherwise he might be held out for a portion or all of his term. Hence, the necessity for adopting the standard fixed by the law for determining the prima facie title.

Some of the expressions above stated are taken from cases where the remedy sought is mandamus. The appellant concedes that in a mandamus proceeding the title to an office will not be inquired into and that the certificate of election will be taken as conclusive. State ex rel. Butler v. Callahan, 4 N. D. 481, 61 N. W. 1025; Chandler v. Starling, 19 N. D. 144, 121 N. W. 198; State ex rel. Langer v. McDonald, 41 N. D. 389, 170 N. W. 873. It is argued, nevertheless, that as this is not a mandamus proceeding this rule is not applicable. If the certificate of election is sufficient evidence of one's title to an office to enable him to gain possession by mandamus, it should, and does, likewise constitute sufficient evidence of title to make an adverse claimant a usurper within the rule that equity will sometimes protect one in possession against interference by an intruder. This is but another way of saying that equity follows the law in considering whose possession it may rightfully protect. If one has a sufficiently clear title to an office that he can invoke mandamus to obtain possession, it is inconceivable that equity will interfere to disturb the exercise of such clear legal right. It follows from what has been said that the order appealed from is right and it must be affirmed.

The facts brought to the attention of this court upon this appeal and upon an original application of the attorney general, which was consolidated with this appeal for purposes of argument, point to an urgent public interest in an early disposition of the proceedings involving the right of the defendant to hold the office. This has been recognized by this court to the extent of saying that superintending control will be

exercised to the end that any proceedings involving title to the office may be brought to as speedy a conclusion as is consistent with the public right and interest and the gravity of the issues involved.

Order affirmed.

BURKE, Ch. J., and BURR, NUESSLE, and CHRISTIANSON, JJ., concur.