Joseph CRAWFORD, Petitioner,

v.

Howard SNORTLAND, The Honorable Norman Backes, The Honorable John Garaas, The Honorable Michael O. McGuire, and The Honorable Lawrence A. Leclerc, Respondents.

Howard SNORTLAND, Petitioner,

v.

Joseph CRAWFORD, Respondent.

Civ. No. 9906.

Supreme Court of North Dakota.

Dec. 31, 1980.

Wheeler, Wolf, Wefald, Peterson & McDonald, P. C., Bismarck, for petitioner and respondent Joseph Crawford; argued by David L. Peterson, Bismarck.

Chapman & Chapman, Bismarck, for petitioner and respondent Howard Snortland; argued by Daniel J. Chapman, Bismarck.

PAULSON, Justice.

Joseph Crawford was a candidate for the office of North Dakota Superintendent of Public Instruction in the general election which was held on November 4, 1980. Howard Snortland was the incumbent and he also was a candidate for the office of Superintendent of Public Instruction. After the November 4, 1980, general election, the state canvassing board convened and determined that Crawford had received 154,221 votes while Snortland had received 116,510 votes, a certificate of election was duly issued on November 19, 1980, and Crawford filed his oath of office on November 25, 1980. On December 3, 1980, Snortland filed a contest of election along with a notice of contest of election and a summons with the district court of Cass County. In his contest of election, Snortland alleged that 20,000 copies of a letter signed by John M. Sellie, the chairman of the North Dakota Republican Party, were sent to households in North Dakota with the assistance of Crawford. Snortland further alleged that Crawford's actions constituted an "illegal act" within the meaning of § 16–20–22, N.D.C.C., which provides that in the case of a violation of the Corrupt Practices Act (Chapter 16–20, of the North Dakota Century Code), any person guilty of a violation thereof "shall be punished by being deprived of the ... office". In addition, Snortland alleged that Crawford exceeded the campaign spending limitation set forth

in § 16–20–04, N.D.C.C., and that violations of §§ 16–20–17.3 and 16–20–04, N.D.C.C., constitute grounds for disqualification of Crawford for the office of Superintendent of Public Instruction.

On December 9, 1980, Crawford submitted an application for a temporary restraining order and an application for a writ of prohibition to this Court and urged that we accept original jurisdiction over the matter pursuant to Article IV, § 86 of the North Dakota Constitution. In his application for a temporary restraining order and for a writ of prohibition, Crawford contended that certain sections of Chapter 16–20, and particularly § 16–20–22, N.D.C.C., constituted a violation of equal protection of the laws under the Fourteenth Amendment of the United States Constitution and under Article I, §§ 11 and 20 of the North Dakota Constitution; as well as a violation of freedom of speech under the First Amendment of the United States Constitution, and Article I, § 9 of the North Dakota Constitution. The writ of prohibition was requested in order to prohibit the district court judges in the East Central Judicial District from taking action on the contest-of-election action initiated by Snortland. On December 18, 1980, Snortland submitted an application for a temporary restraining order to prohibit Crawford from assuming the office of Superintendent of Public Instruction pending the completion of the contest-of-election action. Both Crawford and Snortland urge this Court to assume original jurisdiction of this matter for the purpose of determining the constitutionality of certain sections of Chapter 16–20, N.D.C.C. We decline to exercise original jurisdiction under Article IV, § 86 of the North Dakota Constitution.

■ We decline to accept original jurisdiction for a number of reasons. First, substantial dispute exists as to the facts in this matter. Crawford denies that his actions constituted an "illegal act" within the meaning of Chapter 16–20, N.D.C.C. Although both Crawford and Snortland assert that this Court should assume certain facts for the purpose of determining whether or not the provisions of Chapter 16–20, N.D.

C.C., are unconstitutional, a decision of such magnitude cannot be based upon a state of facts which are without a firm foundation because the decision would be purely advisory in nature. *State Bank of Velva v. State Bank of Towner*, 258 N.W.2d 144 (N.D.1977); *Gernand v. Ost Services, Inc.*, 298 N.W.2d 500 (N.D.1980). Second, Crawford and Snortland contend that the public concern over who should occupy the office of Superintendent of Public Instruction requires that this Court decide the issue of the constitutionality of Chapter 16–20, N.D. C.C., because the duties of the Superintendent of Public Instruction are to commence on January 1, 1980. Chapter 16–15, N.D. C.C., contains provisions which serve to expedite the determination of issues in a contest-of-election proceeding. We believe that our decision on the contentions raised by Crawford and Snortland would be inappropriate in view of the fact that the provisions of Chapter 16–15, N.D.C.C., provide for an expedient procedure for handling contest-of-election actions in both the trial court and in this Court. When the legislature has provided a procedure to deal with contest-of-election actions, we believe our exercise of original jurisdiction would be inappropriate. *Kuhn v. Beede*, 249 N.W.2d 230 (N.D.1976), is distinguished as it was decided on an appeal; and *State ex rel. Sanstead v. Freed*, 251 N.W.2d 898 (N.D. 1977), is distinguished on the basis that there was no statutory remedy to provide relief. Here, we have previously stated, there is a statutory remedy.

■ Our authority to exercise original jurisdiction is based upon Article IV, § 86 of the North Dakota Constitution. In *State ex rel. Link v. Olson*, 286 N.W.2d 262 (N.D. 1979), we held that the Supreme Court's authority to exercise original jurisdiction is discretionary and cannot be invoked as a matter of right. The Supreme Court will determine for itself, on an *ad hoc* basis, whether or not a particular case is within its original jurisdiction. *Malony v. Cass County Court of Increased Jurisdiction*, —— N.W.2d —— (N.D. December 19, 1980); *Spence v. North Dakota Dist. Court*, 292

N.W.2d 53 (N.D.1980); *Olson v. North Dakota Dist. Court, Etc.*, 271 N.W.2d 574 (N.D. 1978); *Burlington Northern v. N.D. Dist. Court, Etc.*, 264 N.W.2d 453 (N.D.1978); *State ex rel. Vogel v. Garaas*, 261 N.W.2d 914 (N.D.1978); *Gasser v. Dorgan*, 261 N.W.2d 386 (N.D.1977).

█ In *State ex rel. Coffey v. McFarland*, 57 N.D. 708, 223 N.W. 931 (1929), the court was faced with the question of whether equity will interfere by injunction to disturb possession of office predicated upon a prima facie legal title to the office. In *Coffey, supra*, 223 N.W. at 993–994, we quoted with approval from *Moulton v. Reid*, an Alabama case:

" 'A certificate issued by the sheriff, a public officer, charged with the duty of conducting the election, ascertaining and declaring its result, is the evidence of election the statute prescribes. When issued, it is conclusive evidence of the result of the election—of the right of the person to the office to which it shows him to have been elected, except when statutes authorize a contest of the election, and the contest is commenced, or on an information in the nature of a quo warranto, to determine the right to the office. In these proceedings it is prima facie evidence of the right, imposing the burden of proof on those who impeach its fairness. [Citations omitted.] Nor is the rule varied because a prior incumbent, contesting the validity of the election, is in office, and authorized to hold until his successor is elected and qualified. [Citation omitted.] When an incumbent of a public office is authorized to continue in office, beyond the duration of the term fixed, until a successor is elected and qualified, the object is to prevent a vacancy in the office, and the suspension of official duty. The extension is for public benefit, and not to confer on the incumbent a right to continue, when another has the legal right to enter into the office. It was the duty of appellant to remain in the office of mayor until the election and qualification of his successor. It was not his duty or right to remain after the election and qualification of the appellee, Reid. The certificate was evidence of Reid's election, as conclusive on the appellant, as it was on any other citizen; and as conclusive on him, as it would have been if he had not been a rival candidate for the office, or if it had not been his duty to remain in office until the election and qualification of his successor. The claim preferred by the bill, is, that he is his own successor, and in that right entitled to hold the office. To support this claim he proposes to remain in the office, and asks that Reid be enjoined from the use of the certificate of election, which it is conceded by the bill, at law, entitles him to enter into the office, and consequently compels the appellant to vacate it. If such is the effect of the certificate at law, it is difficult to conceive how it can be of less force in equity. It is as evidence of the fact of election, which confers the right to the office, that the certificate operates. Equity follows the law, and "when a rule, either of common, or statute law, is direct, and governs the case with all its circumstances, or the particular point, a court of equity is as much bound by it as a court of law, and can as little justify a departure from it." 1 Story's Eq. § 64.' [*Moulton v. Reid*, 54 Ala. 320 at 323 (1875)]"

Snortland attempts to distinguish the *State ex rel. Coffey* case, *supra*, because the remedy sought is not a writ of mandamus. This distinction is without merit because the conclusion of the canvassing board, coupled with the certificate of election issued to Crawford and the oath of office filed by Crawford, is sufficient evidence of his title to the office of Superintendent of Public Instruction to enable him to gain possession of that office. On the basis of the rationale expounded in *State ex rel. Coffey v. McFarland, supra*, we conclude that the subject matter and its posture are not appropriate for the issuance of either a writ of prohibition or a temporary restraining order; therefore, Crawford's application for a writ of prohibition and a temporary restraining order and Snortland's application for a tem-

porary restraining order are denied. In denying these applications, the law will be allowed to take its normal course and we trust that Crawford, in assuming the office of Superintendent of Public Instruction, recognizes that an effort must be made to prevent any irreparable injury in the event the evidence in the case, when tried on its merits, warrants the Court to conclude that he violated certain sections of the Corrupt Practices Act, Chapter 16–20, N.D.C.C., and further, that the provisions of Chapter 16–20, N.D.C.C., do not violate either the United States Constitution or the North Dakota Constitution.

For reasons stated in this opinion, Crawford's application for exercise of original jurisdiction, the writ of prohibition, and the temporary restraining order are denied and Snortland's application for a temporary restraining order is also denied.

ERICKSTAD, C. J., PEDERSON and SAND, JJ., and DOUGLAS B. HEEN, District Judge, concur.

VANDE WALLE, J., disqualified.

DOUGLAS B. HEEN, District Judge, sitting.