## The People on the Relation of Michael Finnegan vs.
### Francis Mayworm.

Where, on information in the nature of a quo warranto, the State calls upon an individual to show his title to an office, he must show the continued existence of every qualification necessary to the enjoyment of the office. The State is bound to make no showing, and the defendant must make out an undoubted case.

Where ballots were cast for Michael *Finnegan,* the relator, by the name of Michael *Finegan,* the rule of *idem sonans* applies, and they should all have been counted and allowed to the relator.

The statute which requires of a person elected to the office of sheriff, that he shall file the oath and bond of office within twenty days after receiving official notice of his election, *or within twenty days after the commencement of the term for which he was elected,* only applies to the person declared elected by the board of canvassers, and not to one to whom the board have refused a certificate.

*Heard May* 18*th. Decided May* 28*th.*

Information in the nature of a quo warranto.

*Wm. Gray,* for relator.

*D., S. A. & D. Goodwin,* for respondent.

CAMPBELL J.:

An information, in the nature of a quo warranto, having been filed against the defendant, to inquire by what authority he assumes to exercise the office of sheriff of the county of Houghton, and suggesting that Michael Finnegan is entitled to the office, an informal plea was put in, claiming the office, and denying any usurpation; and the facts are agreed upon.

On the 30th day of September, 1856, an election was held pursuant to statute, in Houghton county, for the election, among other officers, of a sheriff for said county, for the term commencing January 1st, 1857. For said office, the

following votes were cast, by duly qualified electors, viz.: For John Burns, 369 votes; for Michael Finegan, 271 votes; for Michael Finnegan, 175 votes; for Michael Finnigan, 1 vote; which were all the votes cast. The board of canvassers declared Burns duly elected. No formal official notice of the result of the election and the decision of the board was given to Finnegan, but he had knowledge thereof immediately after the decision being made. He never took or filed the oath of office required by law, nor did he ever give and deposit the bond required by law.

Burns never qualified under the election, and the decision and certificate of the board of canvassers, by taking and depositing the oath of office, and giving and depositing a bond, as required by law. He was the incumbent of the office for and during the year 1856. But immediately preceding, or upon the 25th day of December of that year, he resigned the office, and there then being no under-sheriff, or other person authorized to perform the duties of the office, the county clerk and prosecuting attorney, on said day, appointed the defendant, Mayworm, to perform the same; who, having duly taken, subscribed, and deposited the official oath, and given and deposited the official bond required by law, entered upon the performance of the duties of the said office, and ever since has continued to perform the same.

The inquiry in this case contains two divisions, which are not necessarily connected.

We have, first, to inquire whether Francis Mayworm has made out his title to the office. If it should turn out that he has failed in this, the question will still remain, whether Finnegan has any rights in the premises.

It appears that Mayworm was appointed on the 25th day of December, 1856, to act, for the time being, in the vacancy created by the resignation of John Burns, whose original term had then but six or seven days to run. This appointment appears to have been regular. But it is not enough that an officer appointed for a temporary purpose, should

show a legal appointment. The usurpation charged is a continuing usurpation, alleged to exist in the month of June, 1857, several months after the commencement of a new statutory term. The rule is well settled, that where the State calls upon an individual to show his title to an office, he must show the continued existence of every qualification necessary to the enjoyment of the office. The State is bound to make no showing, and the defendant must make out an undoubted case. It is not sufficient to state the qualifications necessary to the appointment, and rely on the presumption of their continuance. The law makes no such presumption in his favor. — *State vs. Beecher*, 15 *Ohio*, 723; *People vs. Phillips*, 1 *Denio*, 388; *State vs. Harris*, 3 *Pike*, 570; *State vs. Ashley*, 1 *Pike*, 513.

The case of *The People vs. Phillips* was one where the defendant, as here, claimed to hold over for want of a legal successor; and, instead of showing that no person had, during the whole period, been chosen in his stead, merely showed one abortive election. The Court held he was bound to show that no one had, *at any time*, been chosen to succeed him; and, in the absence of this, he was ousted. Mayworm has shown here that Burns did not qualify, and that Finnegan also did not. Conceding, for the present, that this was enough to cut them both off, the case is still defective in not showing affirmatively that the vacancy had not since been filled, either by election, or by appointment of the local board. For, not only could the board of supervisors have ordered a new election (1 *Comp. L.* 103, 105), which would be valid, at least against all persons except the candidate chosen at the general election, whether, as to him, it would or would not be valid; but the law has itself provided a person upon whom, in the absence of any sheriff or under-sheriff, the duties devolve, to the exclusion of all others. By section 435 (1 *Comp. L.* 210), it is declared that when there shall be no sheriff, or under-sheriff, in any county, the judge of the Circuit Court shall designate one of the coroners to perform the duties

of sheriff. The defendant has shown that when he was appointed for the time being, there was no coroner in office; but he has not shown that one was not elected to take office with the new official year; and, for any thing that appears in the case, his own rights may have been terminated, either by the coming in of a coroner, or a new appointment or election to the vacancy in the sheriff's office. Upon this state of facts, we can raise no presumptions in his favor, and the State is entitled to judgment of ouster against him.

The inquiry, therefore, becomes necessary, Whether Finnegan is entitled to the office? This depends on two contingencies: *first*, whether he was duly elected; and *second*, whether, if elected, he has not lost his right by not qualifying.

That he was duly elected is, we think, beyond controversy. Acting in this case as judges of the facts as well as of the law, we think the votes cast for the same name, spelled in two different ways, must be counted together. "Finnegan" may be fairly considered as *idem sonans* with "Finegan." No point was made on this variance by the counsel for the defendant; and it is conceded that Mr. Finnegan was elected by the voters by a clear majority. He is, therefore, entitled to the office, unless he has, by neglecting to qualify, forfeited his title. It is claimed in contravention of the rights of Finnegan, that the statute required him to file his oath and bond within twenty days after his term commenced; and that, by neglecting this, his office became vacant. The statute (1 *Comp. L.* §§ 466, 467) requires the sheriff to take his oath and file it with the clerk, and to file his bond with the county treasurer, "*before entering upon the duties of his office, and within twenty days after receiving official notice of his election, or within twenty days after the commencement of the term for which he was elected.*" Section 468 provides that if he shall neglect this, or assume the office without it, he shall forfeit one hundred dollars. Section 475 declares that every office shall become vacant, upon the re-

fusal or neglect of the officer (among other things) to take his oath of office, or to give or renew any official bond, or to deposit such oath or bond, in the manner and within the time prescribed by law.

Without expressing an opinion upon the effect of an omission in other cases, we think the directions as to time are not fairly applicable to a person to whom the election-board refuses a certificate, but can only apply to the person declared elected by the board. Their finding is *prima facie* sufficient to authorize a recognition by the various authorities of the candidate whom they decide to be elected. It would be a very harsh rule to apply the legal disabilities to a person who can not, by reason of the default of the inspectors, secure his rights. The object of our election laws requires us to aid, and not to obstruct, one who receives the popular vote for an elective office. And, in our view, the statute regulating proceedings on informations of this kind, settles the law on this subject. Section 5295 Compiled Laws provides that if judgment is rendered in favor of the person averred to be entitled to the office, he shall be entitled, after taking the oath and filing the bond of office, to enter upon its duties. Although the law is silent as to the time of filing some *oaths*, yet in most, if not all, cases where *bonds* are required, they are directed to be filed within a given time; and the statute of vacancies, if susceptible of the construction urged against the relator, would clash with the section just referred to. By construing them together, and not extending the disability to a person who has been refused his certificate, we give to the law a meaning more consistent with justice. They are parts of the same statute (being contained in the original Revision of 1846), and both provisions must be made operative.

We are, therefore, of opinion that the relator is entitled to the office.

Judgment must be rendered of ouster against the defendant, Francis Mayworm, and also that Michael Finnegan, the

relator, is rightfully entitled to the office of sheriff of Houghton county.

The other Justices concurred.