### The People ex rel. Emile P. Benoit v. George Miller.

*Certificate of Election, effect of: Oath of office: Bond.* A certificate of election, whether rightfully or wrongfully given by the Board of Canvassers, confers upon the person holding it the *prima facie* right to the office until his right is rejected by a voluntary surrender, or by a judicial determination against him.

The statute requiring the oath of office and bond to be given within a certain time, applies only to persons declared elected, and to whom the certificate of election has been given.

*Heard July 9th. Decided July 10th.*

*Quo warranto.*

The information in this case was filed to test the right of defendant to the office of Treasurer for Wayne County.

But a single question is presented by the pleadings, viz., Whether the relator was obliged to offer to file his official bond and oath — the defendant claiming to hold the office by virtue of a certificate of election, and refusing to vacate the same.

*A. Pond,* for relator.

*T. Romeyn* and *Wm. Gray,* for respondent.

CHRISTIANCY J.

By the rejoinders the respondent has placed his own, as well as the relator's rights to the office upon the single fact, that the relator did not offer to file his bond and take the oath of office.   And this fact being admitted by the demurrer, presents the single question, whether under the facts alleged and admitted by these pleadings (the 4th and 5th pleas, the replications and rejoinders), the relator was bound to offer his bond or to take the oath of office in order to negative the respondent's right to the office or to establish his own.

By his pleas, the respondent had alleged, in substance, that he was holding over under his former election, because no successor had yet been elected and qualified.   If no successor had been either elected or qualified, his right to hold over was clear.

But to this the Attorney General replies that an election was duly held in November, 1866; that relator and respondent were candidates at that election for said office; that relator received the greatest number of votes and was duly elected to the office, but that the Board of County Canvassers wrongfully gave the certificate of election to the respondent, who, under color of such certificate, assumed to file the bond and to take the official oath required by law of the person elected, and then, under color of these proceedings, wrongfully usurped and held the office.

16 MICH. — D.

These facts, thus set up in the replication, if true, entirely negative the allegation in the pleas, of the respondent's holding over under his former election; as they show that, instead of holding or claiming to hold over under his prior election, he was in fact claiming to hold the office under the pretence, and wrongful certificate of the election of November, 1866, as his own successor.  It is true the replications do not meet the allegation of holding over by a direct denial or traverse, according to the strict and approved forms of good pleading.  But they set up the facts which constitute a denial, and instead of taking issue directly by a traverse, tender to the respondent an issue upon these facts.

This is doubtless argumentative pleading, and would have been held bad on special demurrer on this ground, and possibly also on the ground of duplicity.  But these are only defects of form, and not of substance; and, as the respondent did not see fit to demur, but has pleaded over, we are to disregard matters of form, and look only to the substance. Nor are these objections of form in the replications such as will authorize us to hold them bad on the demurrer to the rejoinders, under the rule which requires us to give judgment on demurrer against the party committing the first fault in the pleadings; as this rule only applies to errors of substance.

By insisting in his rejoinders only upon the fact, that the relator had not offered to give the bond or take the oath, the respondent has admitted that the relator was duly elected, as alleged in the replications, as well as the wrongful giving of the certificate, and his own pretended qualification and claim under it.

· The Board of canvassers having given this certificate and declared the respondent duly elected, and he having taken the oath and given the bond, and being in possession of the office claiming against the relator, was the latter bound, before he could maintain this proceeding to test the right to the office, to tender his bond or to take or offer to take the

oath of office? This is the only remaining question. We think the statute requiring the oath and bond, must be construed to apply only to persons holding the certificate of election, those whose rights are admitted by the person holding it, and those who, without having the certificate, have obtained a judicial determination establishing their right to the office. The certificate of election, whether rightfully or wrongfully given, confers upon the person holding it the *prima facie* right of holding for the term. And this *prima facie* right is subject to be defeated only by his voluntary surrender of the office, or by a judicial determination of the right.

We find nothing in any of our statutes warranting the inference that the Legislature ever contemplated requiring any person, claiming to have been elected to an office, to take the oath or file the bond, while another person, holding the certificate of election, is in possession of the office under the certificate, refusing to yield to the claim, and the right has not yet been tried.

The bond in this case was to be given to, and approved by the Board of Supervisors, who had already taken the bond of the respondent for the same office. He held the certificate upon which alone they had the right to act, while he persisted to claim the office under it and had qualified, or was ready and willing to qualify under it.

We do not mean to say that if the respondent had abandoned, or should abandon his claim to the office (under the election witnessed by the certificate), admitting the relator's right, that the board might not have received and approved the relator's bond. But they certainly had no jurisdiction to try the validity of the election, as between the relator and the respondent; and in such a *contest* the certificate of election was conclusive upon them, until the right should be judicially tried; and they had no right, under such circumstances, to recognize the relator as Treasurer, by taking and approving an official bond from him. The execution and

tender of such bond by him would, therefore, have been an idle ceremony, without any possible effect.

As to the oath, no person can reasonably be required to swear that he will perform the duties of an office, out of which he is thus kept by another, and which it is yet uncertain whether he can ever obtain.

But the question whether the relator was bound to tender his bond or to take the oath before he could insist upon his right in this proceeding, has already been determined by this court in *People v. Mayworm,* 5 *Mich.* 146, where we held, in reference to the office of Sheriff, that the statute requiring the oath and bond within a certain time, applied only to persons declared elected and to whom the certificate had been given.    And we think the statute in reference to the Treasurer and other officers holding over till their successors are duly elected and qualified, must be construed so as to harmonize with those requiring the oath and bond; and that any other construction would lead to gross absurdity, leaving a person duly elected, but wrongfully kept out of the office, without a remedy to obtain it.

The demurrer to the rejoinders must be sustained.

COOLEY and CAMPBELL JJ. concurred.

MARTIN CH. J. did not sit.