THOMAS C. O'BRIEN *vs.* BOARD OF ELECTION COMMISSIONERS
OF BOSTON.

SAME *vs.* BOARD OF REGISTRARS OF VOTERS OF CHELSEA
& others.

CHARLES G. KEENE *vs.* BOARD OF ELECTION COMMISSIONERS
OF BOSTON.

SAME *vs.* BOARD OF REGISTRARS OF VOTERS OF REVERE.

Suffolk.   October 19, 1926. — October 22, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Primary.   Ballot.   Vote.   Mandamus.*

Petitions, by candidates at a party primary for nomination as district
attorney, seeking writs of mandamus giving directions to boards of
election commissioners and registrars of voters with respect to the
counting of certain ballots, were referred to an auditor and were heard
upon the auditor's reports by a single justice of the Supreme Judicial
Court, who confirmed the auditor's findings and reserved and reported
the cases for determination by the full court.   *Held*, that

(1) The petitions being proceedings at law, the findings of fact, if
warranted upon any view of so much of the evidence as appeared in the
record, must be accepted as true and could be set aside only if without
support in the report;

(2) The cardinal rule for guidance of election officers and courts in
cases of this nature is that, if the intent of the voter can be determined
with reasonable certainty from an inspection of the ballot in the light
of the generally known conditions attendant upon the election, effect
must be given to that intent and the vote counted in accordance there-
with, provided the voter has substantially complied with the require-
ments of the election law;

(3) While the use of pasters in voting for candidates whose names
do not appear upon the official ballot is permissible under the statute,
the statutory provisions in G. L. c. 54, §§ 42, 65, 77, show that the
Legislature intended pasters, where used, to be inserted under the
designation of the office for which the voter seeks to nominate the
candidate;

(4) The omission of the residence of one of the candidates, where
there was substantial compliance with the statutory provisions and the
intent of the voter could be ascertained, did not invalidate a vote;

(5) Findings that a failure of a voter to place the paster in the space
designated for candidates for district attorney, whether containing a
cross or not, made impossible the drawing of an inference of affirmative

intent on the part of the voter to vote for the person named on the paster, and that such a ballot did not manifest the intent of the voter and should not be counted for the name on the paster, were warranted; it could not be said as a matter of law that the placing of such a paster on some other part of the ballot than under the designation, "district attorney," was a manifestation of purpose to vote for district attorney;

(6) Findings, that a failure by a voter to make a cross or mark upon a paster properly located in the space designated for the vote for district attorney rendered impossible the drawing of an inference of affirmative intent on the part of the voter to vote for the name on the paster, and that such a ballot did not manifest the intent of the voter and could not be counted for the name on the paster, were warranted; such act did not as a matter of law disclose a purpose to vote;

(7) A finding that ballots containing the surname alone of a candidate written in under the designation, "district attorney," either with or without the prefix "Mr.," or a similar sounding surname, or the wrong Christian name, or the wrong middle initial where the Christian or surname are both correctly written, did not indicate with sufficient definiteness a purpose to vote for the candidate with that surname, although there was only one candidate of that surname, could not be said as a matter of law to be erroneous.

FOUR PETITIONS, filed in the Supreme Judicial Court for the county of Suffolk respectively on September 23, 25, 27, and 28, 1926, for writs of mandamus directing the respondent boards to count for the respective petitioners certain ballots, cast at the State primary with respect to the republican nomination for the office of district attorney for Suffolk County, which they had not so counted.

By order of *Pierce*, J., Charles G. Keene was permitted to intervene as respondent in the petitions brought by Thomas C. O'Brien, and Mr. O'Brien was permitted to intervene as respondent in the petitions brought by Mr. Keene, and the four cases were consolidated and referred to the same auditor.

The four cases were heard together by *Pierce*, J., upon the auditor's report. Material facts found by him and by the auditor are stated in the opinion. The single justice reserved and reported the cases for determination by the full court.

*G. Alpert*, for Thomas C. O'Brien.

*S. Silverman*, Assistant Corporation Counsel, for Board of Election Commissioners of Boston.

*E. Adlow*, for Charles G. Keene, submitted a brief.

*J. A. Di Pesa,* City Solicitor, for Board of Registrars of Voters of Revere, submitted the case without argument or brief.

RUGG, C.J.    These are petitions for writs of mandamus brought against the Board of Election Commissioners of the City of Boston, the Board of Registrars of Voters of the City of Chelsea, and the Board of Registrars of Voters of the City of Revere.    At the hearing in this court the questions raised by the petition of Charles G. Keene *v.* Board of Election Commissioners of the City of Boston were waived, and, therefore, that petition need not be considered.    The remaining three petitions present for determination questions touching the counting of ballots cast at the State primary with respect to the republican nomination for the office of district attorney for Suffolk County.    For convenience, Thomas C. O'Brien will be referred to as the petitioner, and Charles G. Keene as the intervenor.    The cases were referred to an auditor, who made findings of fact, and later, on his report, were heard before a single justice.    The disputed ballots were offered and received in evidence without objection.    The evidence of the intervenor, reported by the auditor for a limited purpose, was received by the single justice for every competent purpose with additional evidence which all counsel agreed would have been given by the intervenor if he had been further examined.    All the evidence including the auditor's report was considered by the single justice who followed the classification of votes adopted by the auditor, having found it to be a reasonable and comprehensive method for examination of the disputed ballots.    He found the facts with respect to the description of the ballots, the markings thereon, the pasters, and the enumeration of ballots to be the same as found by the auditor.    The single justice found the facts and conclusions of fact to be as stated in the auditor's report and reserved the petitions, on the facts thus found and the pleadings, for determination by this court.

The relevant facts thus found are, that the name of the petitioner and of one William J. Patron appeared upon the official ballots as candidates for the office of district attor-

ney; and beneath their names was a blank space with a square to the right thereof wherein could be written the name of any other candidate desired by the voter. The name of the intervenor did not appear upon the official ballot, but he was a candidate for nomination for the office of district attorney and resorted to the use of pasters to secure votes. Upon these pasters, which were identical in size, form and substance, appeared the correct name and address of the intervenor with a blank square to the right thereof without other printing or designation. The electorate fully understood what it was necessary to do in order to signify their choice of a candidate whose name appeared on the ballot, because on substantially all the disputed ballots, except as to votes for candidates for district attorney, a cross was invariably and uniformly used in the appropriate place, and that those who cast these ballots clearly and plainly expressed their choice for all candidates for various offices appearing upon the ballot other than the office of district attorney. Only one paster was found on any one ballot, but pasters were applied at various places upon the disputed ballots. There was not a single designation of office to be voted for where a paster had not been placed. Some were attached between the various groups for the different offices, others in the corner, on the top, on the bottom, on the margin, and on the back of the ballot. Some were put on horizontally, others diagonally, vertically, upside down, and, in one instance, a portion only of the paster was used. On many of the disputed ballots there was no cross or mark at the end of the paster or on the ballot at either end of the paster. As to all such ballots, the auditor found that failure of the voter to locate the paster in the space designated for candidates for district attorney, whether containing a cross or not, and failure to make a cross or mark where the paster was located in the space designated for district attorney, rendered it impossible for him to draw an inference of affirmative intent on the part of the voter to vote for the intervenor and also that, so far as it was a question of fact, such ballots did not manifest the intent of the voter and that they ought not to be counted in favor of the intervenor.

Further findings are, that the application of the paster under the designation of some office other than that of district attorney, or between the spaces for such designations tended to indicate that the voter did not intend by the use of the paster to vote for the office in question, and that the reason why the voter, if intending to vote for the intervenor, did not use the blank space reserved under the designation of the office, district attorney, rested upon mere conjecture, and also that the reason why the voter, having generally made crosses in the appropriate places in voting for all other candidates, did not pursue the same course when employing a paster, could not be determined. Summarily stated, the findings are that the intent of the voter could not be ascertained as to pasters attached to other parts of the ballot, and as to pasters attached under the designation of the office of district attorney without any mark, and that the appearance of such ballots did not afford any satisfactory foundation for determining the intent of the voter.

Another group of ballots had a paster, accompanied or unaccompanied by a cross, located outside the space designated for candidates for district attorney or had a paster unaccompanied by a cross within the district attorney space, where a cross had been made in the square opposite the name of the petitioner. The finding as to these ballots is, that the voter had done everything necessary or proper for him to do to express his choice for the petitioner and that the use of the paster, as described, did not show a purpose to vote for two candidates, but indicated more probably that, after applying the paster by mistake, the voter changed his mind. Such ballots were found to express an intent to vote for the petitioner.

After making these general findings, the different classes of ballots were dealt with in detail by the auditor and the single justice. Class A consists of ballots with pasters unaccompanied by a cross and located upon the ballot in some place other than under the designation district attorney, there being no cross in the district attorney space. These ballots were found not to express any ascertainable intent on the part of the voter and to be blank votes as to

the office of district attorney.  Class B consists of ballots
with pasters under the designation district attorney without
a cross upon the paster or elsewhere under that designation.
These ballots were found not to disclose the intent of the
voter and hence to be blank votes as to district attorney.
Class C consists of ballots with pasters, accompanied by a
cross, and located elsewhere upon the ballot than under the
designation district attorney, some being under the desig-
nation of another office and some outside the designation for
any office, there being no cross for any candidate under the
designation district attorney.  These also were found not
clearly to express the intent of the voter and to be blank
votes as to district attorney.  Class D consists of ballots
where the name or a portion of a name without a street
address was written under the designation District Attorney
and there was a cross or mark accompanying such writing.
As to these the finding was that where the correct name of.
the intervenor was used or a name sounding substantially
similar or the abbreviation of his Christian name or the
correct initial or initials when more than one was used, or
where "Mr. Keene is referred to as Councillor" or as
"Present Acting Mayor, City of Boston" he in fact holding
these offices, the voter manifested an intent to vote for the
intervenor; but that where the surname alone of the inter-
venor was used, either with or without the prefix "Mr.," or a
similarly sounding surname, or the wrong Christian name,
or the wrong middle initial where the Christian or surname
are both correctly written, did not indicate with sufficient
definiteness a purpose to vote for the intervenor.  Class E
comprises ballots with a paster unaccompanied by a cross
or mark in some place other than under the designation
district attorney and where a cross or mark is against the
name of the petitioner.  These ballots were found to express
the intent of the voter to vote for the petitioner.  Class F
comprises ballots with a paster, unaccompanied by a cross
or mark under the designation district attorney, and with
a cross or mark opposite the name of the petitioner.  These
ballots were found to express the intent of the voter to vote
for the petitioner.  Class G comprises ballots with a paster

accompanied by a cross or mark but placed upon some other part of the ballot than under the designation district attorney and where there was a cross or mark opposite the name of the petitioner. These ballots also were found to express an intent of the voter to vote for the petitioner.

It is not necessary to consider the votes under the group of ballots entitled on the record Miscellaneous Class, because they are few in number and do not affect the general result, and we do not understand that any special argument has been directed to overturning the findings with respect to them.

These petitions are proceedings at law. Therefore, these findings of fact, if warranted upon any view of so much of the evidence as appears in the record, must be accepted as true. They can be set aside only if without support in the report. *Brewster* v. *Sherman*, 195 Mass. 222, 226. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

The cardinal rule for guidance of election officers and courts in cases of this nature is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election, effect must be given to that intent and the vote counted in accordance therewith, provided the voter has substantially complied with the requisites of the election law; if that intent cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted. *Strong, petitioner*, 20 Pick. 484. *Flanders* v. *Roberts*, 182 Mass. 524. *Ray* v. *Registrars of Voters of Ashland*, 221 Mass. 223, 225. *Beauchemin* v. *Flagg*, 229 Mass. 23, 24. Of course the right to vote is a sacred privilege. Every rational intendment is to be made in favor of its rightful exercise. But the Legislature is clothed with power to enact appropriate laws to regulate the orderly conduct of elections and to facilitate the counting of votes. Where reasonable statutes have been enacted to this end, the voters must observe their terms and exercise the franchise under the law. *Blackmer* v. *Hildreth*, 181 Mass. 29.

The findings of the auditor and the single justice upon the facts disclosed on this record were warranted under this rule.

No person can become a voter who is not able to read the Constitution in the English language and write his name. It follows that he must have sufficient intelligence to observe and understand the physical arrangement of the ballot. That arrangement bears an unmistakable meaning. *O'Connell* v. *Mathews*, 177 Mass. 518. The use of pasters in voting for candidates whose names do not appear upon the official ballot is permissible under the statute. A casual inspection of the ballot shows that votes for candidates are designed to be made manifest by appropriate cross or mark under the designation of the general offices. This is particularly true with reference to the use of pasters. No political or other designation can appear upon the pasters and no vote cast in violation of this · provision can be counted. G. L. c. 54, § 65. By § 42 of the same chapter the names of candidates on the official ballot must be arranged under the designation of office; and in § 77, it is provided that the name of a candidate inserted by the voter must be in the space provided therefor and a cross made in the square at the right. The collective force of these statutory requirements points to the conclusion that the Legislature intended pasters, where used, to be inserted under the designation of the office. Minor departures from the terms of the statute where there has been substantial compliance with its provisions and where the intent of the voter can be ascertained do not invalidate the vote. *Beauchemin* v. *Flagg, supra, Ray* v. *Registrars of Voters of Ashland, supra.* The omission of the residence of the intervenor on some ballots rightly was found not to invalidate such votes.

The crucial finding underlying the determination of the auditor and single justice is that it was impossible for them to ascertain the intent of the voter to vote for the intervenor for district attorney unless the paster was under the designation district attorney and was marked with a cross or other sign disclosing a purpose to vote. That finding has support in reason. It cannot be said that the placing of the paster on some other part of the ballot than under the designation district attorney is a manifestation of purpose to vote for district attorney. Thus placing the sticker may be by mis-

take or design but whatever may be the cause, such a ballot does not disclose a purpose to vote for an office designated on a part of the ballot where the sticker does not appear. *Keenan* v. *Briden,* 45 R. I. 119, 125. *Rutledge* v. *Crawford,* 91 Cal. 526. So also the placing of a sticker under the designation district attorney without marking it does not necessarily disclose a purpose to vote. When the sticker has been thus attached, without more, the ballot is in the same condition in effect that it would have been in if the name on the sticker had been printed on the official ballot. The use of the sticker in the circumstances disclosed, without more and without any cross or mark, cannot be held as matter of law to indicate the purpose and intent of the voter to cast his vote for the intervenor as a candidate for district attorney. The findings in these respects cannot be pronounced erroneous in law. *People* v. *Fox,* 114 Mich. 652. *Riley* v. *Trainor,* 57 Col. 155. *Hunt* v. *Campbell,* 19 Ariz. 254, 289. *Erickson* v. *Paulson,* 111 Minn. 336. *King* v. *McMahan,* 179 Ky. 536, 540.

The findings as to the ballots where a name or portion of a name was written under the designation district attorney cannot be pronounced erroneous in law. The name of a person is the distinctive characterization in words or words and initials by which he is known and distinguished from others. The use of the name commonly identifies a person. Where a description other than his name is used it generally is a question of fact whether such description identifies the particular person. Discriminative abbreviations may or may not be sufficient. Certain descriptions may leave no doubt as to the person intended. That is illustrated in the case at bar by the use of the surname together with an official title unmistakable in signification. But it cannot be said as matter of law that a surname alone, a surname with a different Christian name, or other incorrect or incomplete naming such as appeared upon the disputed ballots, identifies the intervenor as the specified individual intended by the voter. There is nothing inconsistent with this conclusion in *Strong, petitioner, supra.* Where the name written was *idem sonans* with that of the intervenor the

ballots were rightly counted for him. *People* v. *Mayworm*, 5 Mich. 146. The respondents have called our attention to several decisions in other jurisdictions. It is not necessary to review them. In general they do not seem to us inconsistent in law with the conclusion here reached. See for example *Carpenter* v. *Ely*, 4 Wis. 420, where the findings of fact were held to control. But however that may be, we are clear that the findings here made cannot be held erroneous as matter of law.

The auditor and single justice each made his determination in the light of all the extraneous evidence presented. Giving full weight to that evidence, no sound ground appears for overturning their determination on this point. It is not necessary to consider further questions of evidence, even if it be assumed that they are rightly before us on this record.

All questions of law which have been argued have been considered, but need not be discussed further. No reversible error of law appears on the record.

It follows that the conclusions of the auditor affirmed and adopted by the single justice as to the vote in Boston, Chelsea and Revere must be adopted by the respondents. In the case against the Board of Election Commissioners of the City of Boston there should be added two hundred and thirty-three votes to the vote of the petitioner as found by the respondent board, namely, ten thousand, six hundred and twenty-one, making his total vote ten thousand, eight hundred and fifty-four. From the total vote for the intervenor, as determined by the respondent board, namely, twelve thousand, four hundred and ninety-one, there should be deducted five hundred and fifty-one votes, leaving his total vote eleven thousand, nine hundred and forty. In the case against the Board of Registrars of Voters of the City of Chelsea the vote for the petitioner should be nine hundred and sixty instead of nine hundred and forty-three; and for the intervenor five hundred and thirty-five instead of five hundred and sixty-nine. In the petition of Charles G. Keene v. Board of Registrars of Voters of the City of Revere, the vote for Mr. O'Brien should be two thousand, one hundred and one, being the number determined by the respondent

board, and eight hundred and five for Mr. Keene, instead of eight hundred and four as returned by the respondent board.

*Peremptory writs of mandamus*
*to issue accordingly.*