STANLEY W. COLTEN *vs.* CITY OF HAVERHILL; MARJORIE
GOUDREAULT, intervener.

No. 90-P-315.

Essex. June 20, 1990. - September 20, 1990.

Present: KASS, SMITH, & IRELAND, JJ.

Further appellate review granted, 408 Mass. 1103 (1990).

*Elections*, Ballot, Absentee ballot, Recount. *Practice Civil*, Election case.

In an election case, the legal effect of disputed ballots is a question of law,
and this court must make a de novo determination of the voters' intent.
[269]

In an election case, certain absentee ballots contained in envelopes lacking
signatures of the voters, necessary information about the voters' ad-
dresses, the names of the witnesses, and the witnesses' addresses, as
required by G. L. c. 54, § 92, were facially defective and should not
have been counted or separated from their envelopes until there was a
request for a recount. [269-270]

Restatement of principles set out in *Connolly* v. *Secretary of the Common-
wealth*, 404 Mass. 556 (1989), governing the determination whether a
voter has substantially complied with the absentee voting laws. [270-
271]

Where the procedure for isolating absentee ballots contained in facially
defective envelopes was not followed by a city's registrars of voters and
the irregularity was a material one, a runoff election between two can-
didates for the city's nine-member council was required. [271]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 18, 1989.

The case was heard by *John P. Forte*, J., sitting under
statutory authority.

*John S. Provanzano* for the plaintiff.

*Ashod N. Amirian*, Assistant City Solicitor, for city of
Haverhill.

*William D. Cox, Jr.*, for the intervener.

IRELAND, J. This case involves a dispute between Marjorie
Goudreault and Stanley Colten, who finished ninth and tenth

in the November, 1989, election for nine places on the city council in Haverhill. After a recount, only four votes separated Goudreault and Colten. (Goudreault had 5,197 and Colten had 5,193.) Colten filed a complaint in the Superior Court, challenging the count. The judge who heard the case rejected some of the disputed ballots but found that Goudreault had won by one vote. Colten has appealed, challenging both the absentee ballots and a number of other contested ballots. We conclude that (1) the challenged absentee ballots were facially defective; and (2) the city did not follow the proper procedures for absentee ballots contained in envelopes (which are facially defective), as set out in *Connolly* v. *Secretary of the Commonwealth*, 404 Mass. 556, 569-570 (1989), decided seven months before the Haverhill election. The irregularity is a material one and a run-off election between Colten and Goudreault is required. Compare G. L. c. 54, § 97.

The determination of the legal effect of the disputed ballots is a question of law, *McCavitt* v. *Registrars of Voters of Brockton*, 385 Mass. 833, 839 (1982), *Connolly* v. *Secretary of the Commonwealth*, 404 Mass. at 561, and this court must make a de novo determination of the voters' intent. See *DePetrillo* v. *Registrars of Voters of Rehoboth*, 342 Mass. 13, 14-15 (1961), and *Connolly, supra.* We have examined the enclosing envelopes[1] which were made the subject of challenge. The inner envelopes are defective on their face. They lack the signatures of the voters, necessary information about the voters' addresses, the names of the witnesses, and the witnesses' addresses. See G. L. c. 54, § 92. Most are without statements indicating why the voters did not sign personally. G. L. c. 54, § 98. In spite of these obvious defects, the registrars of voters of Haverhill separated the ab-

---

[1]The ballot goes into an envelope whose design is prescribed in G. L. c. 54, § 87. That envelope contains the affidavits of the voter and a witness that voting requirements set out in § 92 have been complied with. That is the "inner" envelope and is the envelope to which we refer in this opinion. The inner envelope containing the ballot is then transported or mailed to the town or city clerk in an "outer" envelope. See G. L. c. 54, § 87(c) & (d).

sentee ballots from their envelopes and credited them to the respective candidates as indicated. The ballots were then mingled with all the other ballots cast in the election.

What impact those ballots may have had on the election is speculative. Perhaps they made a difference for one or the other party in this case. It is impossible to determine for whom the tainted ballots were cast. What we do know, however, is that they could have made a difference in this close election and that they should not have been counted or separated from their envelopes. They should have been held separately until there was a request for a recount. See G. L. c. 54, § 94, and *Connolly, supra* at 556.

The proper procedure governing absentee ballots was laid out in the *Connolly* case. We repeat what the court requires (at 569-570) of election registrars, on pain of having the election declared invalid.

"We now emphasize that election officials at the level of the original ballot count have no discretion as to the statutory requirements for a valid absentee ballot. Section 94 of c. 54 requires election officials at this level to enforce the procedural protections of c. 54 against fraud in absentee ballots. This section directs an official, before the ballot is separated from the inner envelope (1) to examine the affidavit on the inner envelope, (2) to compare the signature on the inner envelope with the signature on the absentee ballot application (with an exception for voters who receive assistance in signing under § 98), and (3) to ensure in general that the inner envelope complies with all of the requirements of § 92, which include the witnessing requirements. If the inner envelope fails to meet any of these unambiguous requirements and is therefore facially invalid, see *McCavitt*, [385 Mass.] at 841-842, the official must mark the envelope, *without* removing the ballot it contains, 'Rejected as Defective.' G. L. c. 54, § 94 [emphasis original]. Such envelopes are set aside, and are not further examined unless there is a recount. G. L. c. 54, § 135. Even on recount, the ballots are not separated from the facially invalid inner envelopes, regardless of the registrars' opinion of the ballots' validity. *Id*. Because the

ballots are not separated from their inner envelopes, cf. G. L. c. 54, § 95 (inner envelopes not marked 'Rejected as Defective' are separated irrevocably from ballots), the statutory procedure minimizes the potential for conjectural votes."

The proper remedy in the circumstances is a new election. This was foreshadowed by the observation in the *Connolly* case (at 570): "If we had reached a different result in a few more ballots, a new primary election would have been necessary. We raise this issue of the election officials' statutory lack of discretion at the level of the original count, therefore, to minimize this possibility in the future."

In our present case, although the trial judge heard testimony from the city clerk, he made no findings, thus we do not have the benefit of any information about the circumstances of each ballot's execution. No transcript of the proceedings was provided to us. We are, thus, unable to determine how (or even if) the judge considered the requirements of *Connolly*. What is clear is that the procedure for isolating absentee ballots contained in facially defective envelopes was not followed. They had not been marked "Rejected as Defective," were not set aside, and were improperly mingled with all the other ballots.

As the election officials of Haverhill failed to follow the procedures specifically prescribed in *Connolly*, it is necessary to require a runoff election between the parties.

Given our conclusion regarding the absentee ballots, which were more numerous than the total difference in votes between the candidates, it is unnecessary for us to discuss the remaining contested ballots. The judgment is reversed, and a new judgment is to be entered ordering a runoff election between Colten and Goudreault.

*So ordered.*