Stanley W. Colten *vs.* City of Haverhill & another.[1]

Essex. December 6, 1990. - January 7, 1991.

Present: Liacos, C.J., Abrams, Nolan, O'Connor, & Greaney, JJ.

*Elections*, Ballot, Absentee ballot, Recount. *Practice, Civil*, Election case.

In an election case, the Appeals Court should have determined the legal effect of each of eighteen protested ballots before ordering a runoff election on the basis of facial defects in the statements appearing on twelve absentee ballot envelopes. [57]

In an election case concerning the legal effect of eighteen protested ballots originally read by an optical scanner, this court reviewed the marks on each of the ballots and made a de novo determination of the voter's intent. [57-59]

Statement of principles guiding this court in determining questions of compliance with absentee voting laws. [60]

In the absence of any allegation of fraud, absentee ballots were properly counted in a municipal election notwithstanding the circumstance that the witness's residential address had not been entered in the space provided on the inner envelope enclosing each ballot, as required by G. L. c. 54, § 92. [60-61]

In the absence of any allegation of fraud, absentee ballots were properly counted in a municipal election notwithstanding the circumstance that the inner envelope enclosing each ballot lacked the statement required by G. L. c. 54, § 98, explaining why the voter needed assistance preparing the ballot. [61-62]

Civil action commenced in the Superior Court Department on December 18, 1989.

The case was heard by *John P. Forte*, J., sitting under statutory authority.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*James P. Krasnoo* for the plaintiff.

---

[1] Marjorie Goudreault, intervener.

*Ashod N. Amirian*, Assistant City Solicitor, for the city of Haverhill.

*William D. Cox, Jr.* (*Carolyn Morton* with him) for the intervener.

*James M. Shannon*, Attorney General, & *David E. Sullivan*, Special Assistant Attorney General, for the Secretary of the Commonwealth, amicus curiae, submitted a brief.

ABRAMS, J. This case concerns the 1989[2] at-large election for nine seats on the city council of the city of Haverhill. The board of registrars of voters of Haverhill declared Marjorie Goudreault, the intervener in this case, the ninth-place finisher, and Stanley W. Colten, the plaintiff, tenth. A Superior Court judge also concluded that Goudreault won the election. The Appeals Court reversed, ordering a runoff election between Colten and Goudreault. See *Colten v. Haverhill*, 29 Mass. App. Ct. 268 (1990). We granted further appellate review, and now affirm the Superior Court's determination that Goudreault won the election.

The parties stipulated that the official tally showed Goudreault to have received 5,197 recorded votes and Colten to have received 5,193. At the hearing, eighteen contested ballots and twelve absentee ballot envelopes and affidavits were offered in evidence.[3] The Superior Court judge held an evidentiary hearing and determined Goudreault to be the winner by a vote of 5,196 to 5,195. The judge concluded also that the contested absentee ballots were valid.

---

[2]Although the election is for a two-year period, no party sought direct appellate review and no party asked this court or the Appeals Court to expedite this matter.

[3]In his record appendix, Colten includes photocopies of applications for absentee ballots in addition to the twelve litigated in the Superior Court. Colten justifies the inclusion of these extra applications for absentee ballots under G. L. c. 54, § 135, twelfth par. That portion of § 135 states that "[w]hen the ballots are summoned to court, only such ballots as have been duly recorded as protested at a recount shall be required to be produced except by express order of the court." The parties submitted only twelve absentee ballots to the Superior Court. There is no basis on this record for any appellate court to order unprotested ballots be brought to court. The attorney who argued orally for Colten was neither trial counsel nor the author of the brief.

In reversing the judgment of the Superior Court, the Appeals Court looked first to the twelve contested absentee ballot envelopes. It declared the envelopes to be facially defective because they lacked certain information required by G. L. c. 54, § 92, and because some of the envelopes lacked statements required by G. L. c. 54, § 98, explaining why the voter needed assistance preparing the ballot. Citing our decision in *Connolly* v. *Secretary of the Commonwealth*, 404 Mass. 556 (1989), the Appeals Court held that the local election officials failed to follow the proper procedure for verifying the facial validity of the envelopes and that a new election was required between Colten and Goudreault. The Appeals Court did not reach the issue of the contested ballots.

The dispute over the contested ballots should have been addressed first. "[T]he determination of the legal effect of the ballots is a question of law. . . . [T]his court must make a de novo determination of the voters' intent." (Citations omitted.) *Connolly*, *supra* at 561. It is impossible to know whether the twelve absentee ballots might have made a difference in this election until a definitive determination of the precise margin of victory has been made. See *id.* at 561 ("[I]n order to prevail, one of the candidates must show a winning margin of at least one vote more than the number of absentee ballots wrongfully counted").

*The disputed ballots.* In *O'Brien* v. *Election Comm'rs of Boston*, 257 Mass. 332, 338 (1926), we set forth the standard by which we conduct our de novo review of contested ballots in a case of this nature. "[I]f the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election, effect must be given to that intent and the vote counted in accordance therewith, provided the voter has substantially complied with the requisites of the election law; if that intent cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted." Although this case concerns ballots originally read by an electronic optical scanner rather than by hand, the

*O'Brien* standard nevertheless applies. See *McCavitt* v. *Registrars of Voters of Brockton,* 385 Mass. 833, 838 (1982) (*O'Brien* standard applies to review of electronic punch card ballot system).

The Haverhill ballots required voters to indicate their choices by filling in the space between the head and tail of an arrow pointing to the selected candidate's name. This space is known as the "target area." Eighteen candidates were on the ballot for this at-large city council election. Voters could select up to nine choices. Any ballots on which more than nine candidates were chosen were not counted because the voter's choice as to the nine candidates was unclear.

On many of the eighteen disputed ballots the voter indicated preferences outside the target area, or both inside and outside the target area. Even if the voter's mark did not follow the precise instructions on the ballot, the vote is to be counted as long as the intent can be determined with "reasonable certainty." See *O'Brien, supra* at 338; *Gilligan* v. *Registrars of Voters of Wilmington,* 323 Mass. 346 (1948).

The Superior Court judge reviewed the ballots, and agreed with the decisions of the Haverhill board of registrars on all except five ballots. After our own review, we agree with the Superior Court judge on all except two ballots. On the ballot labelled "B," the voter marked the target area corresponding to ten candidates' names and also placed "X" marks next to nine of those names. In order not to disenfranchise this voter, we assume that the voter intended to clarify which nine of the selections were to be counted by placing an "X" next to the name. The registrars counted this ballot for Goudreault. We agree with the registrars and also count this ballot for Goudreault. Ballot "L" contains thick marks connecting the arrows in the target area next to nine of the candidates' names, and a tentative line drawn partially across the arrow next to a tenth name. Because all of the marks elsewhere on the ballot consistently are heavy and consistently complete the arrow, we assume this tenth mark was a mistake, or an incomplete decision aborted once the voter realized he or she

already had voted for nine candidates. Ballot "L" should have been recorded for Goudreault.

The Superior Court judge's review of the ballots left Goudreault with 5,196 votes and Colten with 5,195. Because we have decided that two of the ballots rejected as overvotes by the Superior Court should have been recorded for Goudreault, the final vote tally is 5,198 for Goudreault and 5,195 for Colten.

*The absentee ballots.* Because the three-vote margin of victory is less than the number of contested absentee ballots, we move on to consider whether those ballots were improperly counted, requiring a runoff election.[4]

General Laws c. 54, § 92, requires an absentee voter, after filling out the ballot, to enclose it in an inner envelope and to execute an affidavit on the envelope. A witness also is required to sign an affidavit on the envelope and to fill out his or her residential address. Section 98 of c. 54 allows a voter who is unable to prepare the ballot or to sign his or her name, to receive assistance. The assistant must "add in writing a statement that the voter is unable to write, the reason therefor, and shall sign the voter's name on the inner envelope." G. L. c. 54, § 98. The inner envelope is then placed in an outer envelope and delivered to the city or town clerk. G. L. c. 54, § 87.

The inner envelopes used in this election contained preprinted affidavits for both the voter and the witness, as well as spaces in which to provide both parties' residential addresses. The statement required for voters who are unable to prepare their own ballots or sign their names was not preprinted on the inner envelope.[5]

Colten argues that there are two reasons to reject the contested absentee ballots in this case. First, the witness's address is missing from eleven of the envelopes. Second, on

---

[4]On the result we reach, we do not discuss Goudreault's argument that if a runoff election is required, it is required for the entire city council.

[5]In an amicus brief, the Secretary of the Commonwealth informs us that the form for inner envelopes has been revised to include such a preprinted statement.

three of the envelopes the witness signed for the voter and placed the word "by" between the assisted signature and her own signature. These envelopes did not include statements pursuant to G. L. c. 54, § 98, providing the reasons why the voters were unable to write.

When absentee ballots are counted by election officials, they carry a presumption of validity. "The challenger has the burden of overcoming that presumption." *McCavitt, supra* at 846.[6] In considering absentee ballots, we are concerned with "[t]he preservation of the enfranchisement of qualified voters and of the secrecy of the ballot, the prevention of fraud, and the achievement of a reasonably prompt determination of the result of the election." *McCavitt, supra* at 844, quoting *Bell v. Gannaway*, 303 Minn. 346, 353 (1975). "An absentee voter should not be disenfranchised if he substantially complies with the election law." *Id.* Therefore, election officials should not reject envelopes for insubstantial technical defects or for omissions that can be easily rectified. Indeed, G. L. c. 54, § 97, commands that "[n]o [absentee] ballot . . . shall be rejected for any immaterial addition, omission or irregularity in the preparation or execution of any writing or affidavit."

The failure of a witness to include his or her address is an omission which might, in some cases, be easily rectified by the officials themselves from public records. For example, if the officials have public records in their custody from which they can obtain the address, § 94 does not require them to ignore this information. Rather, § 97 and the statute's goal of enlarging voter enfranchisement, see *McCavitt, supra* at

---

[6]The author of Colten's brief asserts that there was no stenographer at the hearing. After checking with the Superior Court, we learned that the matter was in fact stenographically recorded and the name of the stenographer easily obtainable. Therefore, if Colten wanted to challenge the judge's determination that the presumption of validity had not been overcome, it was his burden to provide a transcript of the relevant portions of the proceeding. "If the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, he shall include in the record a transcript of all evidence relevant to such finding or conclusion." Mass. R. A. P. 8 (a), 378 Mass. 932 (1979).

844, would permit the official himself or herself to fill in the missing data. Here, the absentee ballots reveal that one witness signed seven envelopes and another witness signed three envelopes.[7] Because the omission of the witnesses' addresses could have been corrected by public records,[8] Colten has not persuaded us that the presumption of validity of the absentee ballots has been overcome on this ground. See note 6, *supra.*

Moreover, in the absence of any allegation of fraud, rigid insistence on perfected completion of every blank on the inner envelope will not serve the statute's protective purposes. Substantial compliance is sufficient. We are reluctant to disenfranchise these voters based on omissions of a third person. Cf. *Connolly, supra* at 563 (voters not to be disenfranchised because of error of election official).

The second omission alleged to invalidate these ballots is their failure to include a § 98 statement regarding the reasons the voter was unable to write. "The failure to add a § 98 statement . . . however, does not, by itself, invalidate a ballot." *Connolly, supra* at 564. In *Connolly,* we upheld ballots without statements because the witnesses signing on the voters' behalf placed their own initials after the signature. Here, the "by" between the assisted voter signature and the witness signature was an equally clear indication that the voter signed by an agent. Each of these voters had indicated on their absentee ballot application that they were disabled, thereby providing an additional means for the election officials to ascertain why the voters were unable to sign. Moreover, the envelope did not instruct that voters unable to sign for themselves must include statements explaining the inability. See note 5, *supra.* In the absence of any allegation of

---

[7]Colten claimed that the voter named on one of these envelopes did not vote and that the signature was not hers. The judge found, based on the voter's son's testimony, that the signature was that of the voter and that the voter had voted.

[8]Goudreault and the city claim that the city clerk testified that ten of ballots were from residents of two nursing homes. According to the city, the clerk said that she knew the witnesses on those ballots to be employees of the nursing homes.

fraud, we affirm the Superior Court judge's conclusion that the presumption of validity was not overcome.[9]

We hold that Goudreault received 5,198 votes and Colten received 5,195. Because the contested absentee ballots were properly counted by the Superior Court judge, the judgment of the Superior Court declaring Goudreault the winner of the ninth seat on the city council is affirmed.[10]

*So ordered.*

---

[9]Goudreault and the city contend that one of the absentee ballots contains no deficiencies because all the blanks on the form including the voter and witness signatures are filled out. Colten contends that the voter's signature on this ballot is missing. Our comparison of the voter signature on the envelope with the signature on the absentee ballot application raises a question whether the envelope was actually signed by the voter. Unlike the other ballots with assisted signatures, this one does not contain any notation that the voter did not sign it personally. The ballot may be an assisted ballot. However, because Goudreault's margin of victory was three votes, even if we counted one more vote for Colten and one less vote for Goudreault, the outcome of the election would not be affected.

[10]Counsel who authored the brief complains that the Superior Court judge did not consider an affidavit from a person who claimed to be a registered voter who was not permitted to vote. That issue was not raised by Colten's complaint and therefore the judge was not required to consider that affidavit. The city claims that at the hearing the clerk disputed the affidavit in her testimony. Colten's failure to provide a transcript precludes appellate review on this issue.