Brassard, J.
This case comes before the court on the plaintiffs motion for declaratory judgment on his complaint for mandamus. In the complaint for mandamus, the plaintiff asks the court to declare invalid the recount of a municipal election in the Ciiy of Gardner for the office of Ward One City Councillor, and to order that the City hold a new election for that office.
BACKGROUND
On November 2, 1995, a municipal election was held in the City of Gardner. The plaintiff, Mark P. Hawke (“Hawke”), was a qualified candidate listed on the ballot for the office of Ward 1 City Councillor. The other qualified candidate listed on the ballot for that office was John P. Kazinskas (“Kazinskas”). Rachel Hulette (“Hulette”), a resident of Ward 1, was not listed on the ballot as a qualified candidate. Nonetheless, she ran a well publicized “sticker campaign” for the office of Ward 1 City Councillor. Numerous stories regarding her candidacy were printed in a variety of local newspapers, including the Worcester Telegram & Gazette, the Gardner News, and the Fitchburg Sentinel & Enterprise. In addition, Hulette advertised her candidacy in the Gardner News, and mailed fliers to residents of Ward 1.
One other woman with a last name very similar to Hulette’s resided in Ward 1 at the time of the election. The voter list for the ward reveals that Myrtle E. Hullette resided at 37 Birch Street, Gardner, at that time. Though the last name of this woman is spelled slightly differently from Rachel Hulette’s, the pronunciation is the same.
The final tally of the November 2 election revealed that 316 votes were cast for Hawke, 310 for Hulette and 116 for Kazinskas. There were thirty-seven under-votes, and five over-votes.[2] Hulette challenged the results, and a recount was held on November 27, 1995, pursuant to G.L.c. 54 §135. The recount tally revealed that 312 votes had been cast for Hulette, 309 for Hawke and 120 for Kazinskas. There was one write-in vote for an individual named “Langley,” and another for an individual named “Turcotte.” There were forty under-votes and one over-vote. The total number of votes accounted for in both the original count and the recount was 784.
The testimony of the City Clerk at the evidentiary hearing did not make clear what procedures were in place at the time of the original tally of votes to ensure that a subsequent recount would be accurate. In response to a question on direct examination which asked what procedures existed to assure that a sticker was not placed on both an envelope and a ballot and both counted for Hulette, she said: “Well, every person that went in was given a ballot, so at the end of the night all of the totals came out. It comes through a machine; we get a total. Then we have to hand count *46 ballots, which total up to the total ballots that were given out.” In response to a question on cross-examination which asked whether poll clerks numbered the ballot cards and envelopes where there was a write-in or a sticker, the clerk stated that “to [her] knowledge, it was not done.” In addition, with regard to write-in votes, she stated that she did not know whether the ballot cards and envelopes were kept together.
DISCUSSION
Sixty ballots[3] are being challenged by the plaintiff. Thirty-seven are ballot cards marked with stickers underneath the column labeled “Ward One Council-lor.” These stickers contain the words “Ward 1 Coun-cillor,” “Rachel Hulette,” and “99 Pearl St., Gardner, MA 01440.” Three of the challenged ballots are ballot cards with the words “Rachel Hulette” written in an open space beneath the column labeled “Ward One Councillor,” and beneath the names of the other two candidates. Three are ballot cards with the name “Rachel Hulette” and the address “Pearl Street” or 99 Pearl Street, listed in the same space referred to above. One is a ballot card with the name “Mrs. Hulette” written in that space, but with no address. One is an envelope with the words “Ward One City Councillor” and “Rachel Hulette” listed in the space provided for write-in votes.[4] One is an envelope containing the title “Ward One,” the name “Rachel Hulette,” and the address “99 Pearl Street, City.” Two are ballot envelopes with the title “Ward One” or “Ward One Councillor,” the name “Hulette” and the address “Pearl Street.” Five envelopes contain the title “Ward One” or “Ward One Councillor.” and the name “Hulette.” Two envelopes say “Ward 1 Councillor” and “Mrs. Hulette, 99 Pearl Street.” Three envelopes are affixed with the stickers described above, but the stickers are on the front of the envelopes rather than in the space provided for write-ins.
The determination of the legal effect of ballots is a question of law. As such, the recount by the city is not final, and the court must make a de novo determination of the voters’ intent. Colten v. Haverhill, 409 Mass. 55, 57 (1991). Connolly v. Secretary of the Commonwealth, 404 Mass. 556, 561 (1989). In making such a determination in the present case, the court is confronted with two principal questions. First, the court must decide whether certain ballot cards and envelopes which contained “write-in” or “sticker” votes were sufficient so that the intent of the voter can be determined with reasonable certainty. Second, the court must determine whether the process used in. conducting the recount was precise enough to avoid inaccuracies in the final tally.
Regarding the first question, the standard for determining whether a vote is valid is whether “the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election” and whether the voter “substantially complied with the requisites of the election law.” O’Brien v. Board of Election Commissioners, 257 Mass. 332, 338 (1926). Applying this standard, the intent of the voters to vote for Rachel Hulette for the office of Ward 1 City Councillor can be determined with reasonable certainty from each of the contested ballots. Despite the fact that another woman with a very similar name (Hullette, as opposed to Hulette) resided in Ward 1 at the time of the election, the intent of the voters can be determined with reasonable certainly. The electorate in the present case is very small in size, and Hulette’s candidacy was widely publicized. These factors make the present case distinguishable from O’Brien, where simply listing the last name of a candidate for District Attorney of Suffolk County was held to not reasonably disclose the voters’ intent.
In addressing the second question, however, it appears that the process was not sufficient to avoid inaccuracies in the recount. The documents submitted to the court, and the testimony given, show that certain procedures designed to ensure the validity of the original vote tally and subsequent recounts were not followed. The testimony makes clear that the poll workers, at the time of the initial tallying of the ballots on November 2, 1995, did not follow the procedures of 950 Code Mass. Regs. 54.05(11), which requires them to “place an identification number on each ballot card and envelope that contains a write-in, unless no name appears on the ballot for an office and no writing appears on the punchcard.” 950 Code Mass. Regs. 54.04(11) (1995). In addition, it is unclear whether the poll workers complied with 950 Code Mass. Regs. 54.05(13), which requires them to circle the punch on the card of over-vote ballots, to mark the ballot card and the envelope with the words “over-vote for the office of,” to insert the ballot card into the envelope, and to place them together into an over-vote tally envelope. 950 Code Mass. Regs. 54.05(13) (1995).
The failure of the poll workers to follow these procedures puts the validity of the recount into question. In order to determine exactly how the change in the election results came about, the court needs to know exactly what happened to the envelopes of sticker/write-in votes, under-votes, and over-votes (at least those over-votes, if any, which resulted from a vote for one candidate on the ballot card and a vote for another candidate on the envelope).
A hypothetical which aids the court in determining the validity and accuracy of the recount is the following. If 100 votes were cast in an election, the ballots and envelopes were then separated after the initial tally, and then a recount were held, there would be 200 possible sources for votes. Each ballot card and each envelope could potentially contain a vote. By failing to match the ballot cards and envelopes, it is possible that the workers simply made assumptions that blank envelopes were paired with filled in ballots, even though the envelopes were actually paired with *47 blank ballots. They also could have assumed that marked envelopes were paired with blank ballots, although in reality they were paired with marked ballots which either contained the same name as that on the envelope or a different name. Based upon this presumption, they could conduct a recount, and still conclude that only 100 votes were cast in total.
In the present case, this reasoning could result in a number of inaccuracies in the recount. The failure to mark the ballot card and envelope of each sticker/write-in vote, and to keep the ballot card and envelope together could have resulted in additional votes being credited toward Hulette in the recount. For example, a person could have placed a sticker or written Hulette’s name on both the envelope and the ballot. The envelope and ballot were apparently then separated after the initial count. As a result, it is possible that both the envelope and the ballot were counted as votes for Hulette when the recount occurred. The defendants argue that this could not have occurred because the total number of votes tallied at both the original count and the recount was 784. However, if the individuals who conducted the recount assumed that the envelopes marked with a sticker or write-in were originally paired with a blank ballot, and that the ballots marked with a sticker or write-in were originally paired with a blank envelope, the final tally of 784 would remain the same. It is clear that there is a distinct possibility that the distribution of votes among the candidates was not accurately tallied for the recount.
Likewise, where an over-vote resulted from the voter casting one vote on the ballot, and placing a write-in or a sticker for a different candidate on the envelope, the election officials may have incorrectly assumed that the ballot belonged with a blank envelope, and that the envelope belonged with a blank ballot. As a result, the over-vote would decrease, and two candidates would be improperly credited with one additional vote. It is noteworthy that the over-vote actually did decrease, and votes were picked up by Hulette, Kazinskas, and the two individuals who had not been credited with any votes from the original count (Langley and Turcotte).
In conclusion, it appears to be impossible to fairly determine what the final tally of the recount should be. The court cannot accurately determine the exact amount of votes cast for any candidate. To simply uphold the original tally would effectively deny Hulette of her right to challenge the results of the election, and would be patently unfair to her, given the slim margin of votes between her and Hawke. The only just and fair remedy which could uphold the rights of each candidate for the office of Ward 1 City Councillor, and which could accurately give effect to the will of the voters is to order a new election for the office of Ward 1 City Councilor.
ORDER
For the foregoing reasons, it is hereby ORDERED that a declaration enter, ordering the Board of Registrars of Voters of the City of Gardner to hold a new election for the office of Ward 1 City Councillor, at the earliest possible date.

An under-vote for an office occurs when a ballot reveals that the voter did not vote for anyone at all for that particular office. An over-vote occurs when the voter votes for more than one person for a particular office.

For the purposes of this decision, the word “ballot” refers to both the ballot card and the envelope.

The parties claimed that there were two such ballots. However, an inspection of the ballots revealed that one of the ballots also contained the address “99 Pearl Street, City.”