**Lyle S. EVENSON, Roger Kolsrud, Henry Landeis, David L. Lee, Robert Schubert, Wilmar Urban, and Ladonna Whitmore, Plaintiffs,**

v.

**Joseph CRAWFORD, in his official capacity as Superintendent of the Department of Public Instruction, and individually; John Lesmeister, in his official capacity as Treasurer of North Dakota; and the State of North Dakota, Defendants.**

**No. A1–82–48.**

United States District Court,
D. North Dakota,
Southwestern Division.

May 28, 1982.

Robert A. Feder, Fargo, N. D., for plaintiffs.

Robert O. Wefald, Atty. Gen., Thomas F. Kelsch, Sp. Asst. Atty. Gen., Bismarck, N. D., for defendants.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

Plaintiffs, who are executive level career employees of the North Dakota Department of Public Instruction, filed their complaint on April 23, 1982, whereby they seek injunctive relief under the provisions of Section 1983, Title 42, United States Code, for alleged violations of federally protected rights under the First, Fifth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is asserted and established under Section 1343(3) of Title 28, United States Code.

Contemporaneous with the filing of their complaint, Plaintiffs moved for a preliminary injunction or, in the alternative, for a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants filed their answer to Plaintiffs' complaint, return to Plaintiffs' motion for preliminary injunction, and motion to dismiss on May 4. On May 5, hearing was had on the motion for Rule 65 relief. At the conclusion of that hearing, the Court took under advisement the motion for temporary restraining order, consolidated the motion for preliminary injunction with a trial on the merits, and set the matter for trial to commence on May 17. The issues framed by the pleadings came on for trial to the Court on the date set; following three days of trial, the parties rested and submitted post-trial briefs. The matter is now under submission.

Plaintiffs are public employees of the State of North Dakota, not protected in their employment by any system of tenure or civil service regulation. On or about March 1, 1982, each of the Plaintiffs received letter notification from the Defendant Crawford that their respective employment would be terminated June 1, 1982. The stated reason for such termination, in each instance, was reduced funding. Plaintiffs seek by this lawsuit to enjoin the projected termination of their employment, and to protect them in their continued employment.

The gravamen of Plaintiffs' claims is that, in fact, they are not threatened with termination because of reduced funding for their respective positions; but, rather, they are being terminated because "... of their political beliefs and associations and for the past and present exercising of their First Amendment rights of the United States Constitution." *Preliminary Statement, page 1 of the complaint.* In particular, Plaintiffs contend that Defendant Crawford added several persons to his executive level staff with full knowledge of impending fiscal problems; that these "new hires" were added to the payroll as a reward for their political support of Crawford during the 1980 election; that the indications of fiscal restraints came to fruition, which necessitated a reduction in force; and that these Plaintiffs are being terminated because they did not publicly support Crawford in his bid for elective office during the 1980 campaign.

The Defendants generally deny the allegations of the complaint, and specifically assert that "... the dismissals of the Plaintiffs from their employment at the North Dakota Department of Public Instruction were caused by fiscal restraints imposed upon such Department, and political beliefs or associations of the Plaintiffs were not the substantial or motivating factor of their dismissals from employment." *Paragraph 12, page 3 of Defendants' answer.*

At the outset, it is noted that party affiliation plays no part in this controversy. Of the seven Plaintiffs, the evidence shows that four are Republicans, one a Democrat, and two are Independents. Likewise, the "new hires" added by Defendant Crawford are a mixture of Democrats, Republicans, and persons of unknown political affiliation.

The office of Superintendent of Public Instruction in North Dakota is a constitutional, but non-political, position. *See:* Article V, Section 12 of the North Dakota constitution; and Section 16–08–01, North Dakota Century Code. As such, it is, traditionally, a noncontroversial position. This is not to say, however, that party politics plays no role in the support of candidates

for the office; quite the contrary. Unofficially, party support has benefitted candidates in the past and, undoubtedly, was a factor in deciding the 1980 election.

None of the Plaintiffs publicly supported Dr. Crawford in the 1980 campaign; indeed, none was asked to support Dr. Crawford prior to the election in November of 1980. (The evidence shows that at least some of the Plaintiffs were solicited by a "new hire" during the summer of 1981 to purchase $10.00 tickets to a social function, any profit from which would be utilized to reduce or retire a campaign debt incurred by Dr. Crawford.) Of the "new hires" Dr. Crawford acknowledges that campaign support was a substantial or motivating factor in the hiring of two persons; he specifically denies that political or patronage considerations played any part in the hiring of the remainder. There is no evidence to show that any of the Plaintiffs were actively involved in supporting Dr. Crawford's opponent in the 1980 campaign.

Defendant Crawford campaigned on the promise to "decentralize" the Department of Public Instruction. To this end, his intent was to fragmentize the central office and establish "regional" centers of operation which would be closer to those institutions benefitted by the existence of the Department and, at the same time, cut down on the considerable travel expense necessary under the existing administration. This radical reform contemplated a shift and reduction in administrative, executive level personnel.

Dr. Crawford prevailed in the 1980 general election with a plurality of approximately 38,000 votes. A certificate of election was duly issued to him, and he filed his oath of office on November 19, 1980. On December 3, 1980, his defeated opponent filed a notice of contest of election and a summons with the district court of Cass County, North Dakota. In that action Dr. Crawford was charged with certain violations of the North Dakota Corrupt Practices Act, Chapter 16–20 of the North Dakota Century Code. Both litigants in that election contest urged the Supreme Court of North

Dakota to accept original jurisdiction for the purpose of obtaining a speedy determination of the constitutionality of certain sections of Chapter 16–20, N.D.C.C. In declining to exercise that jurisdiction, the Supreme Court nevertheless left Dr. Crawford with the *caveat* not to do anything that would result in irreparable injury, pending the final outcome of the election litigation. See: *Crawford v. Snortland, et al.,* 300 N.W.2d 254 (N.D.1980). After having proceeded through the normal course, the election litigation resulted in a pronouncement by the Supreme Court of North Dakota that Section 16–20–04 of the North Dakota Century Code was, indeed, unconstitutional, and thereby terminated in favor of Dr. Crawford. *Snortland v. Crawford,* 306 N.W.2d 614 (N.D.1981). Thus, the restrictions on Dr. Crawford's activities as the new Superintendent of Public Instruction, imposed by the first decision of the Supreme Court of North Dakota, were lifted and he was free to commence implementation of his reorganization plans.

As early as March of 1981 the Defendant Crawford had some indication that fiscal problems—at least as they were related to funding by the federal government—were appearing on the horizon. Prior to that time, he had retained some persons as consultants who were paid on a per diem basis. This procedure, he felt, did not offend the proscription imposed by the Supreme Court of North Dakota in its December, 1980 opinion. Having in mind the knowledge of possible funding cuts in the future, and subsequent to the June 1981 Supreme Court decision which left him free to proceed, Dr. Crawford embarked upon a program of taking on new employees at the executive level, either by converting the consultants to full-time, permanent positions or by outright hire. During this time the new hires filled positions created by normal attrition. At least Dr. Crawford's program of hiring did not at any time exceed budgetary limitations established by the Legislature.

Beginning in mid-October and continuing through December of 1981, Dr. Crawford became aware of real budgetary problems

caused by a drastic reduction in federal funding and the call by the Governor for a five per cent cutback in that part of the departmental budget funded by state revenues. Early in January Dr. Crawford met with his fiscal adviser and administrative assistants for the purpose of formulating a plan to meet the budget crunch. The result of this and subsequent meetings was a decision by Dr. Crawford to terminate the employment of these Plaintiffs, thereby effecting a substantial saving in administrative overhead without depriving the school children of North Dakota of any program monies.

In connection with the letters of termination, Dr. Crawford testified that, although not bound to do so by any statute, regulation or custom, he determined to give the Plaintiffs three months notice so that they would have ample time during the normal period of hiring in the educational field to seek other employment. In fact, he (Dr. Crawford) offered to assist those being terminated to find suitable employment in their chosen field. This decision to give three months notice was made notwithstanding the negative advice of Crawford's senior staff.

Plaintiffs complain that, with the exception of one of the positions filled by new hires, they were not given the opportunity to apply. In other words, they say, if the positions had been advertised or otherwise made open for application, they (Plaintiffs) would at least have had the opportunity to attempt a "shift" within the Department and thereby enjoy continued employment. The policy adopted by Dr. Crawford, say the Plaintiffs, is a "radical departure from past practices at the Department of Public Instruction." So it may be. However, nowhere is it pointed out that such policy offends any statute, regulation or binding policy of the State of North Dakota.

Plaintiffs further complain that the persons chosen by Dr. Crawford to fill the positions involved in this controversy (with the exception of Dr. James Davis and Helen Linden, who Plaintiffs concede are well-qualified for the positions to which they were hired) are wholly and totally unqualified, measured by their educational and experience backgrounds. Without question, education and experience are factors to be considered in judging the qualifications of a person for a specific job; however, they are not the sole criteria. Dr. Crawford testified that, in his opinion, he wanted people with whom he could establish a certain rapport in working out the details of the innovative program he was implementing. This Court will not second-guess the decisions of Dr. Crawford concerning the qualifications of the people he has hired or will hire in the future.

Finally, through the testimony of Mr. Huber, who is the chief fiscal officer of the Department and directly responsible to Dr. Crawford, the Plaintiffs attempt to make the point that, with "real severe belt-tightening" in the operational expenditures of the Department, there would be sufficient funds to continue them in their present positions as well as the "new hires" Dr. Crawford has added. In reality, what Mr. Huber stated was that this circumstance could occur *only* if operational support expenditures were curtailed to the point where Departmental effectiveness was severely hampered.

The Supreme Court of the United States has definitively proscribed the discharge of a nonpolicymaking, nonconfidential public employee from a job that he is satisfactorily performing upon the sole basis of a constitutionally protected activity. See: *Elrod, Sheriff, et al. v. Burns et al.*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); and *Branti v. Finkel et al.*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). The procedural guidelines established by the Supreme Court in *Mt. Healthy*, at page 287, 97 S.Ct. at 576, were more precisely articulated in *Givhan v. Western Line Consolidated School District et al.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979). Those guidelines fix the burden upon the Plaintiffs to establish first, that their conduct (in this case, nonsupport of Dr. Crawford in his bid for the elective

office of Superintendent) was constitutionally protected and, second, that such conduct was a "substantial" or "motivating" factor in Dr. Crawford's decision to terminate their employment. If those two propositions have been established by the Plaintiffs, by a fair preponderance of the evidence, then it becomes incumbent upon the Defendants to go forward with the evidence to establish that Dr. Crawford would have reached the same decision notwithstanding the protected conduct. In other words, if the Plaintiffs are to prevail in this case, this Court must find that "... plaintiffs would not have been discharged 'but for' the constitutionally immunized activity." *Rosaly et al., v. Ignacio et al.*, 593 F.2d 145, 149 (1st Cir. 1979).

■ I find, from a fair preponderance of the competent evidence in this case, that the Plaintiffs have established the first prong of their burden, i.e., their failure to support Dr. Crawford in his bid for public office is "constitutionally immunized" conduct. Defendants contend that such nonactivity by the Plaintiffs is not included within the parameters of Supreme Court pronouncements above cited. However, I conclude that the language found (445 U.S.) at page 515, 100 S.Ct. at page 1293 of *Branti*, supra, where that Court states that

> "If the First Amendment protects a public employee from discharge based on what he has said, it must also protect him from discharge based on what he believes."

brings such neutral, passive, nonactivity within the protective mantle of the First Amendment.

■ Having found that the Plaintiffs carried the first portion of the burden imposed upon them, I further find, from a fair preponderance of the evidence, that they have failed to establish that such protected conduct was a substantial or motivating factor in Defendant Crawford's decision to terminate their employment. This Court, sitting as the trier of fact in this matter, is entitled to judge the credibility of all witnesses, and to weigh the testimony elicited from them. With those considerations in mind, and having evaluated all the evidence

in this case, I find as a fact that the passive conduct of the Plaintiff's exhibited by their nonsupport of Dr. Crawford in the 1980 election was not a substantial or motivating factor in his decision to terminate them.

Notwithstanding, and assuming *arguendo*, that Plaintiffs have established both prongs of their burden as described above, I find as a fact that the Defendant Crawford has proven, by a fair preponderance of the evidence, that fiscal considerations required a reduction in operational expenses within the Department of Public Instruction and that his decision to terminate the employment of the named Plaintiffs would have been reached irrespective of the, immunized conduct.

This conclusion ends the constitutional inquiry.

The Clerk is directed forthwith to enter judgment in favor of the Defendants, whereby the Plaintiffs' motion for temporary restraining order and/or preliminary injunction is denied and that Plaintiffs' complaint and the cause of action therein alleged be dismissed, with prejudice.

Costs are to be taxed in favor of the Defendants.

The matter of attorneys' fees, if any are to be awarded the prevailing party in this civil rights litigation, will be dealt with by post-judgment motion.

IT IS SO ORDERED.